209 N.J. Super. 380 (1985)
507 A.2d 761
PATRICIA D. HEFFELFINGER AND EUGENE M. HEFFELFINGER, PLAINTIFFS,
v.
TOWN OF MORRISTOWN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; SOUTHEAST MORRIS COUNTY MUNICIPAL UTILITIES AUTHORITY, A BODY CORPORATE OF THE STATE OF NEW JERSEY, EDWARD L. VOGT, ALFRED J. MACKIN, RALPH B. WELSH, DUDLEY F. PARKER, WILLIS H. DUTTON, JR., A. NESBITT PHILLIPS, HENRY M. HOYT, WILLIAM D. BRUEN, DONALD A. DELPHO, ROBERT S. ROCHELLE, GLENN K. COUTTS AND JAMES C. PITNEY, BEING THE SURVIVING TRUSTEES OF MORRISTOWN GREEN; RAYMOND B. DECHIARA, SEYMOUR EPSTEIN, JOHN STEVENS, PASQUALE (PAT) DECHIARA, THEODORE (TED) DENMAN, J. ALBERT WUNDER, WILLIAM PIERSON, ANN MACKINNIS, B. SANDELLI (FIRST NAME UNKNOWN, INDIVIDUALLY AND T/A B. SANDELLI CONTRACTING), BEING THE 1981 CHRISTMAS ON THE GREEN COMMITTEE; CHAMBER OF COMMERCE OF MORRIS COUNTY; AND JOHN DOE, RUTH ROE, ABC CORPORATION AND XYZ COMMITTEE (FICTITIOUS NAMES REPRESENTING ONE OR MORE PERSONS OR LEGAL ENTITIES HAVING AN OWNERSHIP INTEREST IN THE MORRISTOWN GREEN AND/OR BEING RESPONSIBLE FOR THE MAINTENANCE AND/OR DECORATION THEREOF), DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County.
May 24, 1985.
*382 George J. Benson, for plaintiffs.
Tari R. Van Winkle for defendants The Trustees of the Morristown Green (O'Donnell, McCord, Leslie & O'Toole, attorneys).
MacKENZIE, J.S.C.
This is a negligence action arising out of an incident which occurred on November 25, 1981. Plaintiff Patricia Heffelfinger (hereafter "Mrs. Heffelfinger") allegedly fell and sustained bodily injury on the Morristown Green[1] while visiting the 1981 *383 "Christmas on the Green" display with her daughter. Her husband sues per quod. Among those from whom they seek money damages are: Edward L. Vogt, Alfred J. Mackin, Ralph B. Welsh, Dudley F. Parker, Willis H. Dutton, Jr., A. Nesbitt Phillips, Henry M. Hoyt, William D. Bruen, Donald A. Delpho, Robert S. Rochelle, Glenn K. Coutts, and James C. Pitney. These individual defendants collectively constitute the successor trustees of the Morristown Green (hereafter "trustees"). The trustees now move for summary judgment on the authority of the charitable immunity statute, N.J.S.A. 2A:53A-7, et seq. ("act"). All parties agree that there are no issues of material fact. Hence, the matter is ripe for determination as a matter of law. R. 4:46-1; Judson v. People's Bank & Trust of Westfield, 17 N.J. 67 (1954).
The trustees assert that Mrs. Heffelfinger's claims against them are barred by N.J.S.A. 2A:53A-7, which provides that:

[n]o nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any persons who shall suffer damage from the negligence from any agent or servant of the corporation, society or association, where such person is a beneficiary, to whatever degree, of the work of such nonprofit corporation, society or association, provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such persons are unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein shall be deemed to exempt the said agent or servant individually from their liability for any such negligence. [Emphasis supplied]
Before the court may conclude that the trustees are entitled to the protection of the act, they must demonstrate that they were a "nonprofit corporation, society or association, organized exclusively for ... charitable ... purposes," which promoted such purposes at the time of the incident. In addition, the *384 trustees must establish that Mrs. Heffelfinger was a beneficiary of their charitable works.

I. "Nonprofit Corporation, Society, or Association."
Mrs. Heffelfinger first contends that the trustees are not a "nonprofit corporation, society or association," and thus are not entitled to the benefit of the act. The trustees argue that their group is tantamount in a legal sense, to such a "society or association."[2] This court agrees that the principles which confer legal immunity upon those entities specifically defined by the Legislature apply equally to these trustees.
The terms "society" and "association" are not clearly defined by New Jersey statutory or decisional law. However, a "society" is generally recognized as "[a]n association or company of persons (generally unincorporated) united together by mutual consent, in order to deliberate, determine and act jointly for some common purpose." Black's Law Dictionary (5 ed. 1979) at 1245. N.J.S.A. 2A:64-1, which allows associations to sue or be sued, uses language similar to the general definition of a society and provides that:
[a]ny unincorporated organization or association, consisting of 7 or more persons and having a recognized name ... may sue and be sued in any court of this state by such name in any civil action affecting its common property, rights and liabilities, with the same force and effect as regards such common property, *385 rights and liabilities as if the action were prosecuted by or against all members thereof.
Thus, a "society" and an "association" may be construed to be functional and legal equivalents.
There presently are 12 trustees. Their organization has been known as the Trustees of the Morristown Green since it was constituted in 1816.[3] Ever since then, the trustees' relationships to each other, to the group, and to the green have been governed by the deed of trust, their by-laws, and the common law. Cf. Marchitto v. Central R.R. Co. of N.J., 9 N.J. 456, 466-67 (1952), overruled on other grounds Donnelly v. United Fruit Co., 40 N.J. 61, 70 (1963). They were formed and continue to exist consensually for a single common purpose  that of maintaining the green for the use and enjoyment of the public. They meet as a group to debate and to deliberate about contemporary means by which to accomplish this common goal. This court cannot discern a difference between a "society" or an "association" and these trustees, and is satisfied that the trustees meet the statutory tests for a "society" and for an "association" within the meaning of N.J.S.A. 2A:53A-7.

II. Organized Exclusively for Charitable Purposes.
The word "exclusively" in N.J.S.A. 2A:53A-7 means "single" or "sole." Kirby v. Columbian Institute, 101 N.J. Super. 205 (Cty.Ct. 1968). The term "charitable purposes" generally has been defined in connection with suits by entities seeking tax-exempt status. E.g., The Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 284 (1970) (construing N.J.S.A. 54:4-3.6); Trustees of Y.M.C.A. v. City of Paterson, 61 N.J.L. 420 (Sup.Ct. 1898). The Y.M.C.A. court noted that the *386 term "charitable" includes religious, educational and various other useful objects, although not all which are benevolent. Id. at 421. The Presbyterian Homes Court approved an Illinois court's definition of "charitable purposes" as
an application of property for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens on government. Coyne Electrical School v. Paschen, 12 Ill.2d 387, 398, 146 N.E.2d 73, 79 (Sup.Ct. 1957) [55 N.J. at 284]
Other courts also have considered what "purposes" are "charitable." For example, in More Game Birds In America, Inc. v. Boettger, 125 N.J.L. 97 (Sup.Ct. 1940), Justice Perskie found that conserving game birds, establishing hatcheries and refuges, and providing education about vermin control constituted "charitable purposes." Although neither the Game Birds case nor the Presbyterian Homes Court addressed the same type of organization and factual scenario, the principles on which they relied and the conclusions which they reached provide a useful analytical backdrop for the instant action.
The first paragraph of count one of the complaint alleges that the trustees are representatives of a "perpetual trust created for the purpose of maintaining a public common in the Town of Morristown for the use and enjoyment of plaintiff and other members of the public." The trustees agree with the description. The present trustees, as an entity, trace their origin to April 1816, when the property now known as the Morristown Green was conveyed to them in perpetual trust by a deed from the First Presbyterian Church at Morristown, New Jersey. The deed specifies that the property is to remain "a Green or common forever." The document also contains a covenant between the trustees and the First Presbyterian Church that:
... it shall not be lawful to erect or build on the said pieces or parcels of land or any part thereof any dwelling house, store, shop, barn or other building of any kind excepting a house for public worship, a Court House, a market house, and a house for a fire engine.
*387 This restriction has remained unchanged since 1816. Consequently, the only lawful uses of the green were and are public and non-commercial. The original deed demonstrates unequivocally that the green was placed in a supervised, perpetual trust in order to maintain a common in Morristown for the benefit, use and enjoyment of the public.[4]
The trustees' sole responsibility under the deed of trust is to preserve the green as a public park or common for the benefit of the local citizenry.[5] In order to fulfill their covenant with the church, the trustees periodically have authorized its renovation. The most recent physical restoration of the green was accomplished in 1981, through the combined efforts of the Town of Morristown, the New Jersey Environmental Protection Agency (green acres), the trustees and other nonprofit community organizations. However, the trustees' role was limited to the collection of charitable contributions which would pay for half of the costs of the renovation project.[6] This fund-raising was accomplished by the trustees' restoration fund raising committee.
The only income which the trustees' association has had over the years has been generated by small assessments *388 against the members to cover the costs of insurance,[7] incidental expenses, and deed recording fees. Furthermore, the trustees have never filed federal or state income tax returns. The green is not subject to town real property tax liability. Finally, the trustees have never received any remuneration, individually or collectively, for their efforts to maintain the green as a park or common for the benefit of the citizens of Morristown and the public in general. Thus, they "give substantially more to the public than they receive." See Presbyterian Homes, supra, 55 N.J. at 284, n. 2.
The court accepts the Heffelfingers' concession that the Morristown Green is preserved by the trustees as a public common. This acknowledgment of the nature of the Trustees' responsibility, combined with the other uncontradicted proofs, satisfy this court that the trustees have an exclusively charitable purpose within the meaning of the act. Just as plaintiff in More Game Birds provided a haven for the creatures it was organized to protect, so do the trustees provide a park-like sanctuary for the use and benefit of the public. Their single-minded dedication to the preservation and perpetuation of the green as "a common forever" is the trustees "exclusive purpose," and it is entitled to the protection of the act.

III. The Promotion of Charitable Objectives.
Policy decisions about permissible uses of the Morristown Green have been made jointly by the town and by the trustees' committee for the use of the green. Because the green is dedicated to public use and enjoyment, it has been the policy of *389 the trustees to grant permission to use the green whenever such use will not endanger or harm its physical amenities.[8]
On November 25, 1981, Mrs. Heffelfinger and her daughter were visiting the annual "Christmas on the Green" display provided by the town's Christmas on the green committee with the consent of the trustees. During that holiday season, the green was, and continues each winter to be, the site of "Thomas Nast's Village."[9] This display was child-oriented, and featured trees strung with traditional Christmas lights, "Santa Claus" in a simulated North Pole home, Thomas Nast cartoon figures, and a few wooden childrens' rides known as "rocking reindeer." It was while her daughter was riding a "rocking reindeer" that Mrs. Heffelfinger allegedly fell and suffered the bodily injuries she complains of in this lawsuit.
The trustees' decision to authorize the use of the green for this display was consistent with their express policy of protecting and preserving the green, yet approving its use for such purposes as would give the public some seasonal enjoyment. Thus, the court finds that when the trustees sponsored the Christmas on the green display in 1981, they were promoting the charitable purposes for which they had been organized.

IV. Mrs. Heffelfinger's status vis-a-vis the Trustees.
Mrs. Heffelfinger cannot be considered "unconcerned in and unrelated to and outside the benefaction of [the trustees]" so as to defeat defendants' claim of charitable immunity. N.J.S.A. 2A:53A-7. Whether a plaintiff is a beneficiary of the "works" of a nonprofit, charitable organization for immunity *390 purposes depends upon whether, at the time of the injury, the organization pleading immunity was engaged in the performance of the objectives it was organized to advance. Book v. Aguth Achim Anchai of Freehold, 101 N.J. Super. 559 (App. Div. 1968). In this case, defendants clearly were fulfilling their obligations as trustees of the Morristown green when Mrs. Heffelfinger allegedly was injured.
Mrs. Heffelfinger also contends that a thirty-year-old woman should not be considered the "beneficiary" of a child-oriented Christmas display. While she acknowledges that her daughter may have derived some pleasure from the display in general and from riding the "rocking reindeer" in particular, she claims that her daughter's enjoyment did not confer a direct benefit upon her and cannot be imputed to her.
The courts of this State have rejected this type of argument. For example, in Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup.Ct. 1932), aff'd 110 N.J.L. 509 (E. & A. 1933), our Supreme Court found that
[p]laintiff entered the premises voluntarily and for her own purposes. To the extent that her need went  that need being a mother's wish to be with her sick child and to speed the latter's recovery by the inspiration of a home presence  she was a recipient of the same benevolence, a beneficiary of the same charitable foundation, as was the patient. The opportunity afforded for her attendance was part of the charitable service the defendant was rendering to suffering humanity. [108 N.J.L. at 456; quoted in Lawlor v. Cloverleaf Memorial Park, Inc., 106 N.J. Super. 374, 387 (App.Div. 1969), rev'd o.b. 56 N.J. 326 (1970)]

V. Conclusion.
Courts of other states have held that the principles which govern the immunity of charitable corporations from tort liability can apply equally to actions against the trustees of charitable trusts or unincorporated charitable societies or associations. See Farrigan v. Pevear, 193 Mass. 147, 78 N.E. 855 (Sup.Ct. 1906) (decided before abrogation of the immunity doctrine in Massachusetts); see also Herndon v. Massey, 217 N.C. 610, 8 S.E.2d 914 (Sup.Ct. 1940) (action against directors and trustee of *391 a charitable association); School Dist. v. City of Philadelphia, 367 Pa. 180, 79 A.2d 433 (Sup.Ct. 1951), cert. den 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed.2d 621 (1951) (action against trustees; decided before abrogation of the immunity doctrine in Pennsylvania). An Ohio court has ruled that when a trustee of a religious, charitable, eleemosynary organization is sued individually for negligence, and the acts or omissions upon which the claim is based were his duty or obligation only because of his position as a trustee, the immunity given to the church will attach to his individual act or omission, unless it can be shown that the act or omission was such that it amounted to a violation of the trust. Latell v. Walsh, 88 Ohio L.Abs. 81, 181 N.E.2d 729 (1961).
This court adopts the proposition that the principles which would accord immunity to a public hospital or a house of worship would apply with equal force to these trustees. As the Supreme Judicial Court of Massachusetts wrote in a case involving an action against an unincorporated orphanage:
There would seem to be in principle no sound distinction between a suit for negligence by which personal injuries have been received, directly instituted against the charity by the person injured, where its corporate form renders such procedure possible, or expedient, and the present case. The object of the charity is the same whether administered by trustees elected by a corporation or selected and appointed under a deed of gift, and even if the exceptions, the trust is stated to be perpetual, and if so its provisions can be enforced in equity. Under either form of administration, those who administer the trust act essentially in a representative, and not in a private capacity ...
[I]n no correct or just sense can it be said that the defendants were conducting a business, or engaged in an enterprise from which they received, or could expect to derive any monetary advantage or private emolument. They were serving without compensation in the supervision of a home for indigent boys which was established for the purpose of enabling them to become self-supporting and efficient members of society. Their duty to the plaintiff in the exercise of this function did not extend beyond the requirement of using reasonable care to select competent servants, and the demands of substantial justice are met if as charitable trustees they are not charged with the negligence of those so employed. [Farrigan v. Pevear, 193 Mass. 147, 151, 78 N.E. 855, 856 (1906); citations omitted]
In light of the foregoing analysis, the court finds that the trustees constitute a nonprofit, charitable organization which *392 holds title to and maintains the green only for public purposes. Before Mrs. Heffelfinger fell, she and her daughter had been enjoying the benefit of the trustees' charitable works on the green. In light of N.J.S.A. 2A:53A-10, which directs that the act shall be remedial in nature and shall be liberally construed so as to afford immunity from liability to those nonprofit organizations which are formed and exist for religious, charitable, educational or hospital purposes, the court concludes that defendant trustees of the green are individually and collectively entitled to summary judgment dismissing the complaint against them.
NOTES
[1] The Morristown Green is a square, 2.5-acre, public common in the center of the Town of Morristown. Vehicular traffic from United States Highway Route No. 202, New Jersey State Highway No. 24, and from local streets is channelled counterclockwise around its four sides. The green is one of the town's most attractive features, with serpentine paved walks, wooden benches, Civil War monuments, soldier's memorials, decorative water fountains, stately trees, flower beds and luxurious lawns. The central business area of the town surrounds it.
[2] The trustees cannot be regarded as a nonprofit corporation. A nonprofit corporation is defined as an entity which may be organized under N.J.S.A. 15A:1-1, et seq. This statute, known as the Nonprofit Corporation Act, provides that a nonprofit corporation may be formed

[f]or any lawful purpose other than for pecuniary profit including, without being limited to, any one or more of the following purposes: charitable; benevolent; eleemosynary; educational; cemetery; civic; patriotic; political; religious; social; fraternal; literary; cultural; athletic; scientific; agricultural; horticultural; animal husbandry; volunteer fire company; ambulance; first aid or rescue; professional, commercial, industrial or trade association; and labor union and cooperative purpose. [N.J.S.A. 15A:2-1a]
However, the trustees are not a corporation and do not qualify as a nonprofit corporation within the meaning of the statute.
[3] The deed of trust from the First Presbyterian Church to the original thirteen trustees was dated April 1, 1816, and is recorded in the Morris County clerk's office in book 0-2 of deeds, at page 417. New deeds have been executed and recorded as successor trustees have been formally appointed. The most recent deed substitution is recorded in book 2550 of deeds, at page 595.
[4] The language of the deed is echoed by a commemorative plaque which has been erected on the green.

The Morristown Green was given by the Trustees of the Presbyterian Church in Morristown to the Trustees of the Morristown Green in 1816 to be held in trust `for the use and enjoyment of the public and to remain as a common forever.'
[5] As a practical matter, the trustees really have not exercised direct control over the use of the green either by individuals or by the public at large since the incorporation of the Town of Morristown in 1865. Direct control of the use of the green generally has been shared with the town government, which acts through its police and parks personnel. The town has also been a major source of funds for the maintenance and upkeep of the green.
[6] The other half of the necessary funds was provided by green acres.
[7] The court notes in passing that the fact that the trustees have purchased insurance does not automatically subject them to liability. In Vitolo v. St. Peter's Church, 118 N.J. Super. 35 (App.Div. 1972), the Appellate Division ruled that a parishioner who sustained injuries while leaving the church after attending religious services could not recover damages for her injuries even though the church carried liability insurance.
[8] Through the years, the green has been the scene of numerous public ceremonial events, including the celebration honoring General Lafayette in 1825; public executions during the later 1800's; band concerts in the early 20th century; anti-Vietnam war demonstrations in the late 1960's and early 1970's; and the 1976 bicentennial festival.
[9] Nast was the 19th century Morristown artist who is credited with creating the familiar jovial image of Santa Claus.