264 N.J. Super. 450 (1993)
624 A.2d 1053
ERIC PELAEZ, PLAINTIFF,
v.
RUGBY LABORATORIES, INC., INTEGRITY, INC., PHYSICIANS & NURSES SUPPLY CORP., CORRINE DEAS, R.N., ESTATE OF JUANITA CLARK R.N., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Argued March 5, 1993.
Decided March 17, 1993.
*452 Mitchell J. Makowicz, Jr. for plaintiff (Blume, Vazquez, Goldfadden, Berkowitz & Donnelly, attorneys; Mr. Makowicz on the brief).
Douglas J. Susan for defendants Integrity, Inc., and Corrine Deas, R.N.; (Hoagland, Longo, Oropollo & Moran, attorneys; Mr. Susan on the brief).
Kathleen B. Lucy, for defendant Rugby Laboratories, Inc. (Scanlon & Spell, attorneys).
SCHWARTZ, J.S.C.
This matter is before the court on defendant's motion for summary judgment pursuant to N.J.S.A. 2A:53-7, the Charitable Immunity Act. The issue before the court is whether a nonprofit corporation which is largely funded by governmental grants, but *453 also funded in part by private contributions should be entitled to protection under the Charitable Immunity Act.
Plaintiff, Eric Pelaez, initiated this suit alleging that on July 16, 1989, while a patient at defendant Integrity, Inc. (sometimes referred to hereinafter as "Integrity House"), he suffered second degree burns from an allegedly defective chemical cold compress manufactured by defendant Physicians & Nurses Supply Corp., supplied by defendant Rugby Laboratories Inc., and administered by a nurse employed at Integrity House.
Plaintiff alleges that on June 28, 1989, he injured his hamstring while playing softball at Integrity House, and sought medical attention from the on-duty nurse. In answers to interrogatories, plaintiff stated that Nurse Clark treated his leg injury by administering a chemical cold compress which leaked, causing chemical burns to the treated area. Plaintiff claims that the treating nurse failed to treat him in a reasonable manner and failed to instruct him on the proper and safe use of the compress.
Integrity Inc., a non-profit corporation of New Jersey whose organizational purpose is "to keep former drug addicts drug free" (Defendant's Exhibit B, Certificate of Incorporation), asserts that plaintiff's claims are barred by N.J.S.A. 2A:53A-7, which provides as follows:
No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence.
Lorraine Brown, an employee of Integrity House familiar with its funding, was deposed. Ms. Brown testified that Integrity House raises private contributions through various fund-raising activities. Contributions are raised by submitting proposals to *454 various private foundations, conducting car wash operations, soliciting advertisements for a graduation journal, and soliciting donations from churches in exchange for work performed at those churches by Integrity House patients.
Integrity House tax returns for 1988 revealed that out of a total funding of $3,027,009 defendant Integrity House received $2,550,870 (84.3%) from governmental grants, and $476,139 (15.7%) from public support of various organizations, foundations and individuals. Public support income consisted of $308,452 (10.2%) worth of in-kind contributions and $167,687 (5.5%) from monetary contributions.
In 1989, Integrity House tax returns revealed that out of a total funding of $4,112,706 Integrity House received $3,398,425 (82.6%) from governmental grants and $714,281 (17.4%) from public support. Public support in 1989 consisted of $377,671 (9.2%) worth of in-kind contributions and $336,610 (8.2%) from monetary contributions.
Under N.J.S.A. 2A:53-7 the defendant must demonstrate that it is a non-profit corporation, society or association that is organized exclusively for religious, charitable, educational or hospital purposes, and promoted such purposes at the time of the incident. Heffelfinger v. Town of Morristown, 209 N.J. Super. 380, 383, 507 A.2d 761 (Law Div. 1985). Defendant must also demonstrate that plaintiff was a beneficiary of its charitable works at the time of the injury. Id., 209 N.J. Super. at 384, 507 A.2d 761; Parker v. St. Stephen's Urban Development Corp., 243 N.J. Super. 317, 324, 579 A.2d 360 (App.Div. 1990).
When there is no dispute as to the material facts, the determination of whether a non-profit corporation, society or association is organized for religious, charitable, educational or hospital purposes is a question of law for the court to decide. See e.g., Bixenman v. Christ Episcopal Church Parish Home, 166 N.J. Super. 148, 150, 399 A.2d 312 (App.Div. 1979); Gould v. Theresa Grotta Center, 83 N.J. Super. 169, 171, 199 A.2d 74 (Law Div. 1964), aff'd o.b., 89 N.J. Super. 253, 214 A.2d 537 (App.Div. *455 1965). Since no such dispute of material facts exists, it is appropriate for the court to decide this matter on motion for summary judgment.
Defendant Integrity House must demonstrate that it was promoting its stated charitable purposes of keeping former drug addicts drug free when this incident occurred. Pomeroy v. Little League Baseball of Collingswood, 142 N.J. Super. 471, 475, 362 A.2d 39 (App.Div. 1976). Plaintiff has admitted that he was a patient at Integrity House at the time of the injury. Plaintiff alleges this injury occurred as a result of defendant's negligent treatment of a hamstring injury he suffered while playing softball at Integrity House as a patient there. Courts have long recognized that recreation is a form of education which leads to the furtherance of charitable purposes. Stoolman v. Camden County Council Boy Scouts, 77 N.J. Super. 129, 135-136, 185 A.2d 436 (Law Div. 1962); Pomeroy, supra, 142 N.J. Super. at 475, 362 A.2d 39. The court concludes that at the time plaintiff sustained his injury as a result of treatment following a recreational activity Integrity House was promoting its charitable purposes and that plaintiff clearly was a beneficiary of those charitable works. Accordingly, the issue before the court is whether at the time plaintiff suffered his injury, Integrity House was a charitable organization.
It is undisputed that defendant, Integrity House, is a nonprofit corporation. Defendant has produced its certificate of incorporation which demonstrates that Integrity, Inc. was incorporated as a non-profit corporation on August 23, 1968. Defendant has also produced corporate tax returns for 1989, demonstrating that it was a viable nonprofit corporation the year this incident occurred. Nonprofit status alone, however, does not demonstrate that a corporation is organized for "charitable purposes."
The court in Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 284, 261 A.2d 143 (1970) when evaluating a plaintiff's tax exempt status under N.J.S.A. 54:4-3.6, defined "charitable purposes" as:

*456 an application of property for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens on government.
The court in Parker v. St. Stephen's Urban Development Corp., supra, 243 N.J. Super. at 324, 579 A.2d 360, noted that the language contained in N.J.S.A. 54:4-3.6 is nearly identical to that of the charitable immunity statute, and cited Presbyterian Homes, to explain that "nonprofit status cannot be equated with charitableness. Rather, it is but one factor which merits consideration in the determination whether property is being used for charitable purposes."
Plaintiff, relying on Parker, contends that defendant should not be entitled to charitable immunity because most of defendant's funding is derived from governmental grants. In Parker a church organized a non-profit corporation to operate a low and moderate income housing project. This nonprofit corporation used federal monies together with rent payments to fund the project. A tenant was injured in a fall on the sidewalk of the apartment house project and sued the corporation. The court in Parker found that the corporation was not organized for charitable purposes, but rather was merely a conduit for federal rent subsidies and thus was not entitled to immunity under the act.
The court in Parker noted the following factors in reaching its decision:
Indeed, by the very nature of its operation, defendant contravenes one of the footings of charitable status  undertaking acts by which the government is relieved pro tanto from a burden it would otherwise have to perform. Presbyterian Homes, 55 N.J. at 285, 261 A.2d 143. It is the government which pays defendant's mortgage interest, supplies mortgage insurance, and subsidizes the tenants sufficient to meet its operating expenses, including the remaining mortgage payments. Defendant was not created to lessen the burden on government but to obtain as much funding from the government as possible and to operate the project exclusively with that funding. As such, it is no more entitled to charitable immunity than the government itself.
Equally important is the absence from defendant's operation of fund-raising activities and charitable contributions. As far as our research reveals, no New Jersey case has ever applied the immunity statute in circumstances such as these. *457 Private charitable contributions have been involved at least in part in every case in which immunity has been conferred. (Emphasis supplied.)
243 N.J. Super. at 326, 579 A.2d 360.
The court in Parker goes on to find that the defendant there did not engage in private fund raising activities and concluded as follows:
This is not to suggest that defendant's activities are not salutary or that its operation with federal funds deserves our disapprobation. Nor is it to suggest that an actual charity which receives a measure of support from the government would be prohibited from claiming immunity. See Gould v. Theresa Grotta Center, supra. The inquiry in each case should focus on the essence of the entity itself, If a nonprofit corporation is performing a charitable service and is essentially supported through charitable contributions, the fact that it happens to receive some government support would not alter its nature as a charity for immunity purposes. On the contrary, where as here, an entity is expressly conceived, created and operated to serve purely as a conduit for federal funds in strict conformity with federal regulations, its denomination as a charity for immunity purposes is incorrect, notwithstanding its benevolent aims. Under the circumstances, application of the legislative policy insulating a wrongdoer from liability to an innocent victim which is embodied in the Charitable Immunity Act was unwarranted. (Emphasis supplied.)
243 N.J. Super. at 327-328, 579 A.2d 360.
The Parker case is distinguishable from the case sub judice. Here, defendant Integrity House actively seeks private contributions and derives a substantial amount of income from private contributions. Despite plaintiff's argument that private contributions made up only a small portion of defendant's revenues, tax records indicate that Integrity House relies on private charitable contributions to operate this drug rehabilitation center, and accordingly lessens the government burden of providing such funding.
Plaintiff argues that because a large portion of the private contributions received by defendant were restricted by governmental funding laws, the actual unrestricted private contributions are proportionally insignificant. The court is unpersuaded that governmentally "restricted" in-kind property and service contributions should not be considered when evaluating whether a nonprofit corporation is organized for charitable purposes.
*458 Government restrictions are placed on in-kind and service contributions to ensure that such donated gifts are used for the furtherance of the charitable organization. These non-monetary donations lessen the governmental burden of funding just as cash contributions do. But for these private, in-kind contributions, Integrity House would need government funding or would have to expend money from its charitable fund-raising activities for such goods and services. If such funding was unavailable, then Integrity House would either be unable to treat as many patients, or the quality of patient treatment would decrease. Therefore, these non-monetary charitable contributions should be considered in determining whether the defendant deserves protection under the Charitable Immunity Act.
Moreover, unrestricted monetary donations for the year ending June 30, 1989 amounted to $165,687. The court does not consider such contributions from the public as insignificant, either in absolute terms, or as a percentage of the income received by Integrity House for that year.
In Parker the absence of fund-raising activities was equally important to the court in determining that the defendant was not entitled to charitable immunity. Here, it is clear that defendant has made substantial efforts to obtain funding from private sources. Thus, the court is satisfied that defendant is organized for charitable purposes.
Lastly, plaintiff argues that there is no reason to apply the Charitable Immunity Act to this defendant because liability insurance purchased by the defendant would prevent assets from being dissipated from defendant's trust fund. Plaintiff contends defendant's liability insurance coverage would pay the costs of suit to defendant, thus thwarting the purpose of the charitable immunity act. The court disagrees.
The purpose of the charitable immunity doctrine was explained in Collopy v. Newark Eye and Ear Infirmary 27 N.J. 29, 54-55, 141 A.2d 276 (1958) (Heher, J., dissenting):

*459 [I]f the trust fund were used to satisfy the damages suffered by recipients of the charity through the negligence of the agents or servants of the charity, the fund would be diverted to purposes not within the charitable intention of the founders and patrons of the charity, and thus the benevolent object would be subverted. The common good and welfare is deemed the better served by the preservation of the charitable trust fund than by its diversion to the making of compensation for injury to beneficiaries attending the operation of the charity.
Accord, Parker v. St. Stephen's Urban Development, supra, 243 N.J. Super. at 326, fn. 5, 579 A.2d 360.
Whether or not a defendant has insurance liability coverage should have no bearing on that defendant's status under the Charitable Immunity Act. Insurance premiums are based on a number of variables, one of which is the nature of the risk to be insured. If a nonprofit charitable organization seeks to purchase insurance, the premiums charged to that organization should be lower than other organizations whose purposes are not charitable in nature due to the immunity status afforded by the Charitable Immunity Act. However, if courts were to hold that the Charitable Immunity Act was inapplicable to insured charitable organizations, then the premiums charged to such charitable organizations would ordinarily be higher due to this greater risk of exposure to liability for negligence claims. Therefore, the court rejects plaintiff's argument because the eventual costs of paying these claims would fall on the charities themselves in the form of higher insurance premiums, thereby depleting the resources of such organizations which are available for the pursuit of their charitable purposes.
In light of the foregoing analysis, the court holds that defendant Integrity House is a nonprofit corporation organized exclusively for charitable purposes; that it was promoting its charitable purposes at the time of plaintiff's accident; and that plaintiff was a beneficiary of these charitable works. Accordingly, summary judgment will be entered in favor of defendant Integrity, Inc. dismissing plaintiff's complaint against it with prejudice.