295 N.J. Super. 297 (1996)
685 A.2d 20
DONALD D. LODER, SR., AND MARY LODER, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
ST. THOMAS GREEK ORTHODOX CHURCH, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
November 25, 1996.
*298 Before Judges HAVEY, BROCHIN and EICHEN.
Howard L. Goldberg argued the cause for appellants (Mr. Goldberg on the brief).
William A. Garrigle argued the cause for respondent (Garrigle & Palm, attorneys; James J. Law on the brief).
The opinion of the court was delivered by EICHEN, J.A.D.
In this negligence case, defendant St. Thomas Greek Orthodox Church (the church) successfully moved for summary judgment based upon the defense of charitable immunity, N.J.S.A. 2A:53A-7 (the Act).[1] Plaintiffs Donald D. Loder, Sr. (Loder) and Mary *299 Loder appeal on the ground that the motion judge erred in concluding that Loder was a beneficiary of the charitable and educational works the church was organized to advance as required by the Act.
On October 6, 1991, plaintiffs, along with their children and other family members, attended a church function known as the "Agora" festival (the festival) in Cherry Hill where they enjoyed a Greek dinner for which they were each charged a fee. Loder testified during his deposition that he learned about the festival from a newspaper advertisement and that it was not the first time he and his family had attended. The record reflects that Loder was not a member of the church, and that although he was raised as a protestant, he was not a member of any parish. Loder had gone to the church that evening "to enjoy the Greek food." He testified that "throughout dinner," there were "young girls [or children] dancing." He also testified that he and his family ate dinner in the church building rather than in the tent erected on the church grounds for that purpose. After dinner, Loder stopped at a booth to buy some ethnic food items. Immediately upon leaving the premises, as he was saying goodbye to his daughter, Loder slipped and fell off the edge of the sidewalk adjacent to the parking lot, seriously injuring himself.
The church submitted an affidavit stating it "is a not for profit corporation, which is tax exempt, and was organized exclusively for religion, charitable and educational purposes." The affidavit *300 further recites that the festival is an annual church event which is run as "a fund raiser and to provide the general public with an insight into the rich traditions of the Hellenic [c]ulture and [Greek] Orthodox Christianity." No admission fee is charged generally, but "Greek meals are sold and Greek dancers perform during the meals." Individuals who attend the festival "are encouraged to explore the church and the various exhibits in order to learn more about the traditions of the Hellenic [c]ulture and the [Greek] Orthodox Christianity."
At the motion, plaintiffs' attorney conceded that the church is a charitable association, arguing instead that the fund-raising aspect of the event and the fact that the festival is mainly concerned with exposing people to Greek culture, not religion, precludes the event from being considered one of the "charitable works" of the church. Plaintiffs also maintained that even if the festival is considered one of the church's "charitable works," Loder was not a direct beneficiary of the works at the time of his injury. They contend that Loder's only connection with the church was his physical presence on the premises as part of a commercial venture being conducted and that he took no part in any of the charitable benefits of the church.
The church countered that the Greek Orthodox Church is a "unique" church in that it gets "its beliefs from the Greek culture" and that through the festival, the church is "trying to show the community at large ... the importance of the Hellenic culture in their orthodox religion." Although admitting it charges a dinner fee and that the festival is a fund raiser, the church maintained that its purpose was "to turn people on to the [Greek] Orthodox Christian religion as well as the Hellenic culture itself," and therefore the festival was part of its charitable works.
Accepting the church's position, the judge found that the festival had a dual purpose: raising funds for the church and "introducing" and "educating the public with regard to the Hellenic heritage and culture ... expressed ... by the types of food and the nature of the festival...." In essence, the judge determined that *301 by attending the festival, Loder was "a beneficiary, to [some] degree of the works of [the church]" and that he was not a person "unconcerned in and unrelated to and outside of the benefactions of the [church]." See N.J.S.A. 2A:53A-7a. Consequently, the judge awarded summary judgment against plaintiffs on the ground that the church qualified for immunity from personal injury liability under the Act.
The requirements for charitable immunity under the Act direct a claimant of such immunity to demonstrate that the entity was formed for non-profit purposes; that it is organized exclusively for religious, charitable, or educational purposes; and that it promoted such purposes at the time of the injury to the plaintiff, who was then a beneficiary of its charitable works. See Pelaez v. Rugby Labs., Inc., 264 N.J. Super. 450, 454, 624 A.2d 1053 (Law Div. 1993) (citations omitted); accord Parker v. St. Stephen's Urban Dev. Corp. Inc., 243 N.J. Super. 317, 324, 579 A.2d 360 (App.Div. 1990). Hence, in litigation concerning the Act, the focus is on whether the organization is a charitable association, and whether the injured plaintiff is a "beneficiary" of its charitable works. Rupp v. Brookdale Baptist Church, 242 N.J. Super. 457, 462-63, 577 A.2d 188 (App.Div. 1990).
In analyzing whether an entity qualifies for charitable immunity, the Act directs that
[t]his act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes.
[N.J.S.A. 2A:53A-10].
"Case law also reflects th[is] legislative mandate." Monaghan v. Holy Trinity Church, 275 N.J. Super. 594, 598, 646 A.2d 1130 (App.Div. 1994). See also Schultz v. Roman Catholic Archdiocese of Newark, 95 N.J. 530, 537-38, 472 A.2d 531 (1984).
On appeal, plaintiffs do not dispute that the church qualifies as a charitable association under the Act or that its purposes include educational, cultural, and religious aims. They remonstrate *302 only against the argument that the festival is a "benevolent activity" or "charitable work" of which Loder may be deemed a beneficiary. Relying on Book v. Aguth Achim Anchai of Freehold, 101 N.J. Super. 559, 245 A.2d 51 (App.Div. 1968), plaintiffs argue that, in attending the festival, Loder was present solely as "a patron of a church-sponsored restaurant" where "he merely purchased a meal," much like the patron at the synagogue-sponsored bingo game in Book where this court concluded no charitable immunity existed. We disagree.
Although a church's main purpose may be to provide a place of worship and spiritual guidance,
[its] function is not so narrowly confined. It is not limited to sectarian teaching and worship. In [the] modern view, exercises designed to aid in the advancement of the spiritual, moral ethical and cultural life of the community in general are deemed within the purview of the religious society. A social center is now commonly regarded as a proper adjunct of the local church  conducive to the public good, as well as advantageous to the congregation.
[Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 332-33, 8 A.2d 567 (E. & A. 1939), quoted in Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, 537, 181 A.2d 787 (App.Div.), certif. denied, 38 N.J. 305, 184 A.2d 419 (1962).]
In Bianchi, a Girl Scout was injured when she fell down an unlit stairwell at a church's social center. 123 N.J.L. at 329, 8 A.2d 567. She was barred from recovering against the church because she was deemed a beneficiary of the church's function of promoting individual and societal enrichment. Id. at 332-33, 8 A.2d 567.
Applying the liberal view of charitable benevolence expressed in Bianchi, and subsequently reaffirmed in Anasiewicz, supra, 74 N.J. Super. at 537, 181 A.2d 787, we conclude that Loder clearly was a beneficiary of the charitable works of the church. Without doubt, the church here was engaged in the performance of the charitable objectives it was organized to advance, inasmuch as it was attempting to demonstrate to the community the rich traditions of the Greek Orthodox Church and "the importance of the Hellenic culture in [the] orthodox religion" as expressed through Greek food and dance. The fact that Loder paid for the dinner at the festival does not detract from our conclusion that the church was engaged in its charitable works. The doctrine of *303 charitable immunity is "applicable even where the person injured has paid for the services rendered by the charity." Casper v. The Cooper Hospital, 26 N.J. Super. 535, 540, 98 A.2d 605 (App.Div. 1953) (citing Jones v. St. Mary's Catholic Church 7 N.J. 533, 82 A.2d 187, cert. denied, 342 U.S. 886, 72 S.Ct. 175, 96 L.Ed. 664 (1951)). See also Kirby v. Columbian Institute, 101 N.J. Super. 205, 211, 243 A.2d 853 (Hudson Cty. Ct. 1968) ("[C]harities do not lose their immunities by virtue of the fact that certain fees are charged for their charitable services ...."). Contrary to the circumstances in Book, supra, we are dealing with activities that bear a "substantial and direct relationship" to the church's "general purpose." Cf. Kasten v. Y.M.C.A., 173 N.J. Super. 1, 9, 412 A.2d 1346 (App.Div. 1980) (recognizing that where the nature of charitable association's activities is primarily commercial in character, such as operating a ski area for profit, the association may lose its customary immunity from liability). The festival was not simply a fund raiser, as was the synagogue-sponsored bingo game in Book. In that case, the activity was totally "unrelated to the defendant's institutional life and work." 101 N.J. Super. at 564, 245 A.2d 51. In this case, the contrary is true and, as a result, the judge properly viewed Loder as a recipient of the church's benefactions.
Moreover, as we noted in Anasiewicz, supra, beneficiary status does "not depend upon a showing that the claimant personally received a benefit from the works of the charity." 74 N.J. Super. at 536, 181 A.2d 787, quoted with approval in Rupp, supra, 242 N.J. Super. at 463, 577 A.2d 188. Instead, the test is "whether the institution pleading the immunity ... was engaged in the performance of the charitable objectives it was organized to advance." Anasiewicz, supra, 74 N.J. Super. at 536, 181 A.2d 787. Loder voluntarily partook of the traditional offerings of the Hellenic culture consisting of its food and music. By so doing, he involved himself in the church's efforts to introduce and educate the community about "the importance of Hellenic culture in the[] orthodox [Greek] religion." Indeed, Loder was actually engaged *304 in the very activities of the church in which the church intended him to be involved.
Accordingly, we conclude Loder's activities on the church premises immediately before the accident "[were] such as to classify [him] as a beneficiary of [the church's charitable] works at least in some degree, and that because of such activity [he] may not be deemed to be a person `unconcerned in and unrelated to and outside of the benefactions' of the Society." Peacock v. Burlington County Historical Society, 95 N.J. Super. 205, 209, 230 A.2d 513 (App.Div.) (holding that even mere casual viewing of exhibits in historical society building while plaintiff waited for her husband was sufficient to characterize plaintiff as a beneficiary of the society's charitable works, and therefore, plaintiff was not a person "unconcerned in and unrelated to and outside of the benefactions of the [s]ociety"), certif. denied, 50 N.J. 290, 234 A.2d 399 (1967). See also N.J.S.A. 2A:53A-7a; George v. First United Presbyterian, 272 N.J. Super. 294, 639 A.2d 1128 (App.Div.) certif. denied, 137 N.J. 167, 644 A.2d 614 (1994).
Accordingly, we conclude that the judge's grant of summary judgment was proper. There are no genuine issues of material fact sufficient to require submission to a fact finder, the disagreements being "so one-sided" that the church must prevail as a matter of law. See Brill v. Guardian Life, 142 N.J. 520, 540, 666 A.2d 146 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986). See also Pomeroy v. Little League Baseball of Collingswood, 142 N.J. Super. 471, 473, 362 A.2d 39 (App.Div. 1976); Pelaez, supra, 264 N.J. Super. at 454, 624 A.2d 1053 (concluding that where there are no factual disputes, the question of whether a person is a beneficiary of charitable works is a matter of law to be decided by the trial judge).
Affirmed.
NOTES
[1] The Act provides in relevant part:

a. No nonprofit corporation, society or association organized exclusively for religious, charitable, or educational ... purposes ... shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any ... such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society or association ... where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association[.]
[N.J.S.A. 53A-7a.]
The Act was amended in 1995 but the provisions relevant to this case remain unchanged.