704 A.2d 1334

JOSEPH BLOOM, JR., PLAINTIFF–RESPONDENT, v. SETON HALL UNIVERSITY, SETON HALL UNIVERSITY, INC., STUDENT CENTER PUB OF SETON HALL UNIVERSITY, AND STUDENT PUB, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 5, 1998—Decided January 29, 1998.

---

[6] As noted *supra*, note 1, we were advised at oral argument that R & W is no longer a part of R & R.

Before Judges HAVEY, LANDAU and COLLESTER[1].

*Eugene M. Purcell,* argued the cause for appellants (*Purcell, Ries, Shannon, Mulcahy & O'Neill,* attorneys; *John Thaddeus Rihacek,* on the brief).

*Lawrence S. Reynolds,* argued the cause for respondent.

The opinion of the Court was delivered by

LANDAU, J.A.D.

This appeal raises the question whether Seton Hall University is entitled to statutory immunity in a negligence action instituted by one of its students who suffered a slip and fall in a pub operated on campus by the University solely for students and their guests. We hold that the statutory immunity of *N.J.S.A.* 2A:53A–7 applies, and therefore reverse.

---

[1] With consent of counsel, Judge Collester participated by listening to an audio tape of the argument.

Plaintiff Joseph Bloom, Jr. (Bloom) was a twenty-one year old senior at Seton Hall in 1994, when he and several friends went to the pub for some beers. He fell, apparently in a puddle left when a serving cart was moved.

The pub, operated on Thursday nights and alternate Saturdays, was neither separately incorporated nor distinct from the University. Although not operated for profit, the pub sold beer to students of proper age and their guests, and was subsidized by the Student Government Association. Its employees were students who were obligated to keep the pub clean and to manage the equipment under the aegis of the Student Government Association and, ultimately, the Student Activities Department of the University.

There was testimony that the University deemed the pub to be part of a student's socialization process and a factor in the development of a well-rounded person. Seton Hall's status was documented in the record as a nonprofit educational institution committed to maintaining its "essential character ... as a Catholic institution of higher learning," for which the Archbishop of Newark serves as Chairman of its Board of Trustees and President of the Board of Regents.

The record also shows that some time after plaintiff's accident, a decision was made that the pub would serve only students, but no guests. Thereafter, pub losses mounted sufficiently to prompt closing of the operation. Instead, a campus coffeehouse now operates once a week.

Seton Hall moved before trial for a directed verdict of dismissal based upon Bloom's status as a student of an entity protected by N.J.S.A. 2A:53A–7. Denied without prejudice, the motion was renewed during trial following completion of the plaintiff's case, and again after the defendant rested. These motions were also denied. The jury rendered a verdict in favor of Bloom. Following denial of its motion for a new trial, judgment for Bloom was entered and Seton Hall appealed.

Although conceding that Seton Hall was a university established under Catholic auspices, and that Bloom was a student of the University, the trial judge held that, "I don't believe the defendant proved that Seton Hall was entitled to the charitable immunity statute anyway. But even assuming . . . arguendo somebody would disagree with that, I believe the facts are such that they would not be entitled to the umbrella of the charitable immunity statute under these narrow sets of facts and circumstances as set forth in this case."

Respecting the latter ruling, the judge determined that the injury did not occur while the organization was engaged in its "charitable" works because the pub "was nothing more, nothing less than a bar that was provided for students and for their guests," of which Bloom was a "paying customer," and that running a bar for students does not further the charitable works of the University.

As we understand the judge's reasoning, he was satisfied that "some parts of what goes on in Seton Hall University would be entitled to the charitable immunity statute" but that other activities, notably operation of a pub for students, would not. In consequence, he "could not . . . find that the plaintiff would be a recipient of those works."

Initially we dispose of any cloud raised respecting Seton Hall's status as a nonprofit religiously affiliated educational institution, organized exclusively for religious, charitable or educational purposes, within the meaning of *N.J.S.A.* 2A:53A-7.[2] The trial judge

---

[2] The statute was amended effective July 24, 1995. *L.* 1995, *c.* 183, § 1, 2. Bloom's accident occurred in 1994. Inasmuch as the amendments did not alter the immunity afforded to Seton Hall, we quote the amended language.

*N.J.S.A.* 2A:53A-7 provides in pertinent part:

a. No nonprofit corporation, society or association organized exclusively for religious, charitable, or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corpora-

did take judicial notice of Seton Hall's status as an educational institution. His concern was whether the statute embraced the institution's relationship with a student in the campus student pub. To obviate any confusion arising from the several colloquies in the record, we hold that it cannot reasonably be disputed within this State that Seton Hall is a nonprofit institution organized exclusively for educational purposes. *N.J.R.E.* 201(b)(2). Moreover, our review of the record satisfies us that the undisputed evidence on this issue, were it an issue, was sufficient to so find as a matter of fact and law.

The issue properly before us is whether Seton Hall lost the statutory immunity afforded to such an institution because it operated a pub catering only to students of proper age and their guests, and whether Bloom ceased to be a "beneficiary, to whatever degree, of [its] works" while patronizing the pub. In resolving that issue, we are informed by the statute that:

[t]his act shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes.

[*N.J.S.A.* 2A:53A–10.]

Consistent with this mandate, our cases have afforded to nonprofit institutions, whether educational, religious or charitable, substantial latitude in determining the appropriate avenues for achieving their objectives. In a university, these objectives may reasonably include operation of a quasi-commercial entity such as a cafeteria or a bookstore for the benefit of students, without losing immune status. That a university may determine it is in the interest of its students who are over twenty-one to attract

tion, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.

them (but not the general public) to get together in an on-campus pub, does not alter either the fundamental educational nature of the institution or the relationship of the student to the university as a beneficiary of its works. We think it consistent with reasonable educational goals for a university to conclude that a campus experience ought to include opportunities to mature in an environment enriched not only by study and classes, but by diverse forms of social interchange within the university setting.

Bloom was no less a Seton Hall student because he bought a beer at a University-run student pub than if he bought a sandwich in a University-run commons, and no less a beneficiary of its works. Noting that the pub has been replaced by a campus coffeehouse, we observe that the nature of the beverage sold is not critical to the immunity analysis. Rather, it is the recognition, repeated in our cases since the Legislature responded to the *Collopy* trilogy[3] by adopting the charitable immunity statute (*N.J.S.A.* 2A:53A–7 to –11), that the focus in determining immunity is on the status of the defendant organization (as one exclusively organized for religious, charitable or educational purposes) and whether the injured plaintiff is a beneficiary of its works. *See, e.g., Loder v. St. Thomas Greek Orthodox Church,* 295 *N.J.Super.* 297, 301, 685 *A.2d* 20 (App.Div.1996); *Rupp v. Brookdale Baptist Church,* 242 *N.J.Super.* 457, 462–63, 577 *A.2d* 188 (App.Div.1990). Construed liberally under the legislative mandate of *N.J.S.A.* 2A:53A–10, and *Schultz v. Roman Catholic Archdiocese of Newark,* 95 *N.J.* 530, 537–38, 472 *A.2d* 531 (1984), the term "educational" has been broadly interpreted and not limited to purely scholastic activities. *Morales v. New Jersey Academy of Aquatic Sciences,* 302 *N.J.Super.* 50, 54, 694 *A.2d* 600 (App.Div.1997); *Rupp, supra,* 242 *N.J.Super.* at 465, 577 *A.2d* 188; *Pomeroy v.*

---

[3] In *Collopy v. Newark Eye and Ear Infirmary,* 27 *N.J.* 29, 141 *A.2d* 276 (1958); *Dalton v. St. Luke's Catholic Church,* 27 *N.J.* 22, 141 *A.2d* 273 (1958); and *Benton v. Young Men's Christian Ass'n of Westfield,* 27 *N.J.* 67, 141 *A.2d* 298 (1958), the Supreme Court overturned common law tort immunity for charitable, religious and educational institutions.

*Little League Baseball of Collingswood*, 142 *N.J.Super.* 471, 474, 362 *A.*2d 39 (App.Div.1976).

The broad latitude afforded on both prongs, status of the defendant entity and plaintiff's receipt of its benefactions, is well illustrated in *Loder, supra.* There we upheld the immunity of a church that was serving ethnic meals for a fee at its annual church festival, and held a non-member attendee to be a beneficiary of the cultural education offered at the festival. The facts under review provide a stronger case for immunity than those in *Loder.*

The judgment for plaintiff Bloom is reversed, and the complaint dismissed with prejudice.