713 A.2d 503 (1998)
313 N.J. Super. 476
Danielle GRABER, Plaintiff-Appellant,
v.
RICHARD STOCKTON COLLEGE OF NEW JERSEY and Professor Alan Steinberg, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 31, 1998.
Decided April 24, 1998.
*504 Todd A. Wallman, Shrewsbury, for plaintiff-appellant (Robert A. Olkowitz, attorney; Mr. Wallman, on the brief).
Eileen K. Schlindwein, Deputy Attorney General for defendant-respondent (Peter Verniero, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Schlindwein, on the brief).
Before Judges LONG, STERN and KLEINER.
The opinion of the court was delivered by LONG, P.J.A.D.
In the spring of 1995, plaintiff Danielle Graber was a second year student at defendant Richard Stockton College of New Jersey (Stockton). As part of her spring semester course schedule, Graber enrolled in codefendant Professor Alan Steinberg's Physiology (vertebrate) class. The class met weekly on Tuesdays from 8:30 a.m. to 12:10 p.m. in a campus lab.
On January 24, 1995, Graber and approximately 20 other students were assembled in the lab for class. An hour and a half into the class, Professor Steinberg began demonstrating a vivisection of an anesthetized laboratory rat. At some point after the procedure began, Graber left the lab apparently to go to the bathroom. Somewhere along the way, Graber fainted,[1] fell to the floor and hit her chin. Graber suffered two broken teeth, a split gum, and received ten stitches.
Subsequently, on September 9, 1996, Graber filed a complaint against Stockton and Professor Steinberg alleging that her fall and resulting injuries were caused by their negligence. An answer was filed on behalf of both Stockton and Professor Steinberg asserting various affirmative defenses including immunity under the Tort Claims Act, N.J.S.A. 59:1-1 et seq., and the Charitable Immunity Statute, N.J.S.A. 2A:53A-7.
On February 19, 1996, Stockton and Professor Steinberg moved for summary judgment asserting the affirmative defense of immunity under the Tort Claims Act and the Charitable Immunity Statute. A hearing on the motion was conducted before the Judge John G. Himmelberger on March 26, 1997. Judge Himmelberger concluded that Stockton was entitled to the immunity provided by the statute. In so ruling, he relied on the results of a plenary hearing he had held in another case involving Stockton in which he had ruled that the college was a "not for profit entity organized exclusively for education purposes." Traina v. Stockton State College, ATL-L-4307-95 (Feb. 7, 1997). That status, according to Judge Himmelberger, qualified Stockton for immunity under the statute as long as the remaining requirements of the statute were met.[2]
In this case, rather than conduct another hearing aimed at determining Stockton's institutional organization for purposes of applicability of the statute, Judge Himmelberger relied on his previous determination in *505 Traina. He again granted summary judgment in favor of Stockton (and implicitly Professor Steinberg) based on Stockton's status as an entity immune under the statute. An order issued reflecting this ruling.
Because counsel for Graber had not had an opportunity to review the transcript of the plenary hearing conducted in Traina prior to oral arguments, Judge Himmelberger invited him to read the record and to file a motion for reconsideration if he believed further proceedings were required. Judge Himmelberger relaxed the ten day limitation period in which to file such a motion under R. 4:49 to assure Graber's counsel sufficient time for review. Graber's counsel never sought reconsideration. Instead, on April 9, 1997, Graber filed a Notice of Appeal from the order granting summary judgment.
On appeal, Graber contends that there were material issues of fact precluding summary judgment and that the trial judge "misunderstood the true purpose of the charitable immunity statute." We have carefully reviewed the record in light of her contentions and have concluded that there is no warrant for our intervention.
As it existed in the spring of 1995, at the time of Graber's accident, N.J.S.A. 2A:53A-7 provided that:
[n]o nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence.[3]
Application of the statute turns on satisfaction of each of the elements plainly set forth within it. See Loder v. St. Thomas Greek Orthodox Church, 295 N.J.Super. 297, 301, 685 A.2d 20 (App.Div.1996). The first condition is that only a nonprofit corporation, society or association is within the purview of the immunity granted by the statute. Whether a corporation, society or organization is "nonprofit" is a separate question from whether or not the entity is also a "charity" or organized for "charitable" purposes.[4]See Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 286, 261 A.2d 143 (1970)("[n]onprofit status cannot be equated with charitableness"). Thus an entity not specifically recognized as a charity, as that term has been defined, will satisfy the first "prong" of the statute by producing proofs which identify the entity as nonprofit. See e.g., Seiderman v. American Institute for Mental Studies, 667 F.Supp. 154 (D.N.J. 1987)(incorporation under statute providing for creation of nonprofit corporations and tax exempt status evince corporation's nonprofit status).
*506 In this case, Stockton presented various facts supporting its contention that it is a nonprofit entity. Specifically, Stockton relied on the certification of its vice-president, Charles Tantillo, which stated:
3. [Stockton] is exempt from State sales/use tax pursuant to N.J.S.A. 54:32B-1 et. seq.
4. [Stockton] is exempt from Federal income tax pursuant to Section 501(c)(3) of the Internal Revenue Code as an entity established for the purposes of providing educational services.
5. The operating budget of [Stockton] is derived from various sources which include State support, tuition, contract fees, and gifts or donations.
6. No profits of the College are distributed to any shareholder, board member, or officer of the College. Any revenue which exceeds the College's operational costs is placed into an account to fund subsequent years' operation.
Graber did not contest these facts in the trial court. She contends, for the first time on appeal, that Stockton's status as a "nonprofit organization" is at least questionable because the college "collects tuition, has sports teams which provide entertainment to the community, rents space at its facility for a monetary fee, and has no charter that states that it is organized solely for nonprofit use." She also claims that Stockton's failure to cite any law according it nonprofit status is dispositive of the absence of such status. As such, she maintains that a genuine issue of material fact remained in dispute for a jury to decide. We disagree.
The facts cited by Graber are not in dispute. Taken at face value they simply do not affect Stockton's claim to nonprofit status. A qualifying organization does not lose its statutory immunity merely because it charges money for its services, Rupp v. Brookdale Baptist Church, 242 N.J.Super. 457, 465, 577 A.2d 188 (App.Div.1990), unless it makes a profit or collects fees for services totally unrelated to its organizational pursuits. See Kasten v. Y.M.C.A., 173 N.J.Super. 1, 412 A.2d 1346 (App.Div.1980). Further, a nonprofit entity organized for educational purposes is not confined to providing purely scholastic activities in achieving its objectives. See Bloom v. Seton Hall, 307 N.J.Super. 487, 704 A.2d 1334 (App.Div. 1998) (operation of on-campus pub did not alter fundamental educational nature of educational institution); Pomeroy v. Little League Baseball, 142 N.J.Super. 471, 362 A.2d 39 (App.Div.1976) (entity's educational purpose not vitiated by accomplishing objectives through the teaching and supervision of baseball skills). Thus, the fact that Stockton has sports teams and hosts athletic events does not create a material factual issue as to its nonprofit status and entitlement to immunity.
We note as well that while organization under a statute providing for the creation of a nonprofit entity (see e.g., N.J.S.A. 15A:1-1 et seq.) and a charter reflecting that purpose are both relevant factors to be considered in determining whether an entity is indeed not-for-profit (see Seiderman, supra, 667 F.Supp. 154), neither is sine qua non to the identification of an entity as nonprofit for purposes of the Charitable Immunity Statute. See e.g., Heffelfinger v. Town of Morristown, 209 N.J.Super. 380, 384, 507 A.2d 761 (Law Div.1985).
In short, the various aspects of Stockton's operation and organizational structure to which Graber now alludes, individually and collectively, are not in dispute and fall short of casting any serious doubt on the college's nonprofit status. Thus, despite Graber's claim to the contrary, no genuine issues of material fact were in dispute with respect to these determinations.
The second condition set forth in N.J.S.A. 2A:53A-7 is that an entity asserting the statute as a defense must also be "organized exclusively for religious, charitable, or educational purposes...." Stockton maintains that it is "organized under law, exclusively as an institution of higher learning." On appeal, Graber understandably raises no issue with respect to whether or not Stockton's organizational purpose is educational. See N.J.S.A. 18A:64-1.
The third condition set forth in N.J.S.A. 2A:53A-7 is that the immunity provided in the statute only shields a qualifying organization *507 from liability to "a beneficiary to whatever degree, of the works of such a nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of the corporation, society or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association." On appeal Graber maintains that merely being a student of Stockton did not necessarily make her a beneficiary and "[t]here is no case law that labels a student of a university or a college an automatic beneficiary to that institution." Not so. In Bloom v. Seton Hall, 307 N.J.Super. 487, 704 A.2d 1334 (App.Div.1998) we recently addressed the issue.[5] Bloom, a Seton Hall University student, slipped and fell in a pub operated on campus by the university solely for students and their guests. Id. at 489, 704 A.2d 1334. Bloom sued. Seton Hall moved before trial and at the completion of Bloom's case for a directed verdict of dismissal based upon his status as a student of an entity protected by N.J.S.A. 2A:53A-7. The trial judge denied the motion both times. The jury rendered a verdict in Bloom's favor and, following a denial of its motion for a new trial, Seton Hall appealed. Id. We found that Seton Hall was entitled to the immunity provided by N.J.S.A. 2A:53A-7, reversed the judgment for Bloom and dismissed his complaint with prejudice. Id. at 493, 704 A.2d 1334. Fundamental though unexpressed in our reasoning in Bloom was the conclusion that a student engaging in educational pursuits is per se a beneficiary of a college or a university. Indeed, we stated in Bloom that for purposes of the Charitable Immunity Statute, Bloom was "no less a student" when patronizing the pub or buying a sandwich at the university run commons, "and no less a beneficiary of its works." Id. at 492, 704 A.2d 1334.
Here, Graber admits she was a student at Stockton and neither party disputes that before she fainted in the hallway she was participating in a physiology lab conducted as part of her studies. If Bloom retained his status as a beneficiary of Seton Hall's works while patronizing the campus pub, there is no question that the facts under review here provide a stronger case that Graber was a beneficiary of Stockton's educational "works" at the time she was injured.
We turn next to Graber's contention that in granting summary judgment in favor of Stockton, Judge Himmelberger misunderstood the true purpose of the Charitable Immunity Statute. Relying on Judge Lynch's dissent in Winters v. Jersey City, 120 N.J.Super. 129, 293 A.2d 431 (App.Div. 1972),[6] Graber proposes that the "purpose behind the Charitable Immunity Statute was mainly to protect the trust funds of such charities from serious dissipation and to avoid diversions of their benefactors' contributions from the purpose for which they were made." Graber argues that since Stockton "does not fall into the category of a charitable business" it is not entitled to charitable immunity. However, despite its name, the Charitable Immunity Statute does not apply only to "charities." It also applies to nonprofit religious entities, nonprofit educational entities and nonprofit hospitals.
Graber further argues that Stockton, as a public entity, enjoys protection under the Tort Claims Act and therefore does not "need" the additional protection of the Charitable Immunity Statute. Stockton counters, correctly, that its concurrent status as a public entity whose liability is controlled by the Act does not alter its entitlement to the immunity provided by N.J.S.A. 2A:53A-7. The Act incorporates into its provisions and affords to public entities "any defenses that would be available to the public entity if it were a private person." N.J.S.A. 59:2-lb. (emphasis added). The Charitable Immunity Statute is just such a defense. Pursuant to N.J.S.A. 59:2-1b, the statute is properly applied to Stockton as a public nonprofit college *508 in the same fashion as it applies to private nonprofit colleges organized exclusively for educational purposes. See e.g., Bloom v. Seton Hall, supra, 307 N.J.Super. 487, 704 A.2d 1334. Indeed, the comment to subsection b states:
Subsection (b) is intended to insure that any immunity provisions in the act or common law will prevail over the liability provisions. It is anticipated that the Courts will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope.
Pursuant to this section, courts have applied a wide range of statutory and common law defenses outside the Tort Claims Act to cases brought against public entities. See e.g., Sykes v. Rutgers, 308 N.J.Super. 265, 269-70, 705 A.2d 1241 (App.Div.1998) and Davenport v. Borough of Closter, 294 N.J.Super. 635, 639-42, 684 A.2d 100 (App.Div.1996)(applying common law snowremoval immunity); Del Tufo v. Township of Old Bridge, 278 N.J.Super. 312, 319-323, 650 A.2d 1044 (App.Div.1995), aff'd 147 N.J. 90, 685 A.2d 1267 (1996)(applying defense of contributory/comparative negligence); Benjamin v. Corcoran, 268 N.J.Super. 517, 634 A.2d 108 (App.Div.1993)(applying immunity under Landowners Liability Act, N.J.S.A. 2A:42A-1 et seq.). In this case, the immunity afforded under N.J.S.A. 2A:53A-7 is available to Stockton as a nonprofit institution organized exclusively for educational purposes, even though it is also a public nonprofit college. See also Tice v. Cramer, 133 N.J. 347, 627 A.2d 1090 (1993)(stating that public entities are entitled to immunity both under the Tort Claims Act and as established at common law).
Graber further asserts that a genuine issue of material fact remains in dispute regarding the status of Professor Steinberg. To be sure, the pre-July 24, 1995 version of N.J.S.A. 2A:53A-7, which applies here, did not exempt an "agent or servant individually from their liability for any such negligence." Thus, Professor Steinberg was not immune from liability directly under the earlier, unamended Charitable Immunity Statute. However, it is clear that as an employee of an immune public entity, Professor Steinberg is shielded from individual liability under the provisions of the Tort Claims Act.
In 1994, the legislature enacted L. 1994, c. 49, which amended various sections of the Tort Claims Act, and importantly added the following subsection to N.J.S.A. 59:3-1:
c. A public employee is not liable for any injury where a public entity is immune for that injury.
This amendment was the legislative response to the Supreme Court's decision in Chatman v. Hall, 128 N.J. 394, 608 A.2d 263 (1992) in which the Court found a public employee liable for his negligence where the public entity was immune under the provisions of the Tort Claims Act governing the dangerous condition of property. The legislative history of this amendment makes clear that the bill was "intended to reverse the Chatman ruling and to amend the Tort Claims Act to extend to public employe[e]s the same degree of immunity that the TCA grants to public entities." Senate Judiciary Statement to [First Reprint] Assembly No. 226, May 5, 1994. "The [Senate Judiciary, Law and Public Safety] committee eliminated the requirement that an employee will be immune only if his employer is immune, allowing immunity for a public employee in any case where any public entity is immune." Assembly Judiciary Law and Public Safety Committee Statement to Assembly, No 226, March 21, 1994. (emphasis added). It is undisputed that Professor Steinberg was an employee of Stockton College at the time of the incident causing Graber's injuries. As an employee of a public entity to which immunity attaches, Professor Steinberg is also entitled to immunity pursuant to N.J.S.A. 59:3-1c of the Tort Claims Act.
In sum, the trial judge properly granted summary judgment in favor of Stockton and Professor Steinberg under Brill v. Guardian Life Ins. Co., 142 N.J. 520, 536, 666 A.2d 146 (1995) because each would have prevailed as a matter of law based upon application of the Charitable Immunity Statute and the Tort Claims Act.
The judgment under review is affirmed.
NOTES
[1] Graber stated in an incident report that she "passed out from ether" which was being used in the classroom.
[2] In Traina, Judge Himmelberger also needed to grapple with the issue of whether Stockton was engaged in the performance of its educational objectives at the time of the incident precipitating the suit against the collegei.e., the routine traffic stop of Traina, a Stockton student, by campus police officers while he was driving on campus. Judge Himmelberger concluded that while "a traffic stop in and of itself is not an educational activity ... it is reasonably related to the primary educational function and ought to be afforded immunity."
[3] The statute was amended effective July 24, 1995. L. 1995, c. 183 §§ 1, 2. The relevant portions of the statute, as amended, do not bear on the issue of Stockton's entitlement to immunity. However, the closing provision relating to individual liability of an agent or servant for negligence was deleted and the presently amended version specifically extends immunity to employees of nonprofit entities entitled to immunity under the statute. Thus, if Graber's accident happened today, and Stockton was found immune pursuant to N.J.S.A. 2A:35A-7, Professor Steinberg would also be immune directly under the statute.
[4] When a nonprofit corporation, society or association raises the statute as a defense because it is organized for a charitable purpose (one of four attributes the entity must possess to meet the second requirement of the statute (pre-July 24, 1995 version)), its nonprofit status becomes a factor to be considered along with various others to determine if in fact the entity is a charity. In this case, Stockton does not assert that it is a charity or that it is organized for charitable purposes.
[5] We gave both parties an opportunity to comment on the newly decided Bloom before oral argument.
[6] Judge Lynch's dissenting opinion was adopted by the Supreme Court in modifying the Appellate Division's decision. Winters v. Jersey City, 63 N.J. 7, 304 A.2d 196 (1973).