728 A.2d 264 (1999)
321 N.J. Super. 67
Cecelia HAMEL and Diane Hamel, an infant, by her Guardian Ad Litem, Cecelia Hamel, Plaintiffs-Appellants,
v.
STATE of New Jersey; Attorney General of the State of New Jersey; Borough of Bergenfield; Bergenfield Board of Education; Superintendent, John F. Galish; Roy W. Brown Middle School; Rita Eberhard; Robert Cancro; Robert Petrella; Brad Tirpak; Craig Royston; Philip Lastra; Kevin Thiele; Sean Dillon; David R. Tirpak; Donna M. Tirpak; Craig G. Royston; Deborah A. Royston; John J. Lastra; Catherine Lastra; Joseph A. Dillon; Debra Dillon; Robert Thiele and Jacqueline Thiele, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 1999.
Decided May 4, 1999.
*265 Christine M. Stevenson, Roseland, for plaintiffs-appellants (Contant, Scherby & Atkins, Hackensack, attorneys; Ms. Stevenson and Matthew S. Rogers on the brief).
Daniel McNerney, Hackensack, for defendants-respondents Bergenfield Board of Education, Superintendent Galish, Roy W. Brown Middle School; Rita Eberhard, David Petrella and Robert Cancro (Breslin & McNerney, attorneys; Mr. McNerney, on the brief).
The remaining respondents did not file briefs.
Before Judges HAVEY, PAUL G. LEVY and LESEMANN.
The opinion of the court was delivered by HAVEY, P.J.A.D.
Plaintiffs filed suit against defendants Bergenfield Board of Education (Board), Rita Eberhard, Principal of the Roy W. Brown Middle School, Robert Cancro, Vice Principal, David Petrella, a teacher, and individual students and their parents. Plaintiffs claim that the Board and the school official defendants [hereinafter referred to as the Board defendants] were negligent in failing to protect plaintiff Diane Hamel, a student, who sustained psychological injuries from harassment precipitated by fellow students. The trial court granted the Board defendants summary judgment, concluding that they were immune from suit under the Charitable Immunity Act (Act), N.J.S.A. 2A:53A-7 to 11. The court found that the Act applied because *266 the Board was: (1) a nonprofit organization; and (2) devoted exclusively to educational purposes. We granted plaintiffs' motion for leave to appeal and now reverse. We conclude that the Act was not intended to provide immunity to public entities such as local school boards.
During the 1993-1994 school year, plaintiff Diane Hamel was a seventh grade student at the Roy W. Brown Middle School in Bergenfield. Plaintiffs allege that Diane's fellow students habitually teased and physically assaulted her because she was a "good" student and had received several academic awards. The harassment consisted of pushing, shoving and kicking "on a daily basis." Plaintiffs also claim that Diane's classmates threw "trash" at her and "on one occasion a condom was thrown at her."
Plaintiffs assert that they informed Superintendent John F. Galish of the harassment in September and December 1993. In late January or February 1994, plaintiff and her parents met with Principal Rita Eberhard to discuss the harassment. Nevertheless, the harassment continued. Plaintiffs allege that "[o]n or about January, 1994, Diane collapsed in one of her classes" and, due to the extreme emotional distress caused by the alleged abuse, she experienced partial paralysis in her right leg. Plaintiff was hospitalized for one week following this incident. In January 1994, she was treated by a psychiatrist complaining of "severe stomach aches, anxiety, and recurring nightmares." Plaintiff was diagnosed as suffering from permanent post-traumatic stress disorder. Plaintiffs filed the present action seeking damages against the Board defendants based on negligence, tortious conduct and negligent supervision.
The Board defendants were unsuccessful in seeking dismissal of the complaint on the basis that plaintiffs had failed to meet the threshold requirement of "permanent" injury under the New Jersey Tort Claims Act, N.J.S.A. 59:9-2d. Their subsequent summary judgment was granted on the ground that the Board defendants had immunity under the Charitable Immunity Act. The court reasoned:
This Court accepts movants' position that the Bergenfield Board of Education is a nonprofit organization. The Bergenfield Board of Education has never been required to pay state sales or uses tax. Additionally, the Board of Education is exempt from federal income tax and does not generate any profit. These aforementioned factors were all factors the Graber[1] court considered when recognizing [that] Stockton State was entitled to charitable immunity. As to the second prong, it is undeniable the sole purpose of the Bergenfield Board of Education is to provide for the education of the children of Bergenfield.
At the time plaintiffs filed their complaint, the Act, N.J.S.A. 2A:53A-7, read as follows:
No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association; but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence.[2] *267 Decisions applying the Act have generally focused on whether the entity: (1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works. Loder v. St. Thomas Greek Orthodox Church, 295 N.J.Super. 297, 301, 685 A.2d 20 (App.Div. 1996); see also Graber, supra, 313 N.J.Super. at 481-82, 713 A.2d 503; Parker v. St. Stephen's Urban Dev. Corp., 243 N.J.Super. 317, 324-25, 579 A.2d 360 (App.Div.1990); Pelaez v. Rugby Labs., Inc., 264 N.J.Super. 450, 454, 624 A.2d 1053 (Law Div.1993); Heffelfinger v. Town of Morristown, 209 N.J.Super. 380, 383, 507 A.2d 761 (Law Div.1985).
Because the Legislature directs that the Act shall be "liberally construed," N.J.S.A. 2A:53A-10, we have not hesitated to construe "`nonprofit corporation ... organized exclusively for ... educational purposes' to afford immunity to a wide range of nonprofit organizations that provide educational opportunities or other services which promote the public welfare." Morales v. New Jersey Academy of Aquatic Sciences, 302 N.J.Super. 50, 53-54, 694 A.2d 600 (App. Div.1997) (quoting N.J.S.A. 2A:53A-7). Charitable immunity has been extended to many not-for-profit corporations, even where the entities receive some federal, state or local appropriations to defray their operating costs while serving the public welfare. Morales, supra, 302 N.J.Super. at 54-55, 694 A.2d 600 and cases cited therein. "[T]he fact that [a nonprofit corporation] happens to receive some government support would not alter its nature as a charity for immunity purposes" if it performs charitable services and is "essentially supported through charitable contributions." Parker, supra, 243 N.J.Super. at 327, 579 A.2d 360.
However, we have found no authority for the proposition embraced by the trial court that a local board of education, a public entity, is entitled to the statutory immunity simply because it is a not-for-profit entity and has exclusive educational purposes. The legislative history of the Act is to the contrary. See State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997) ("[e]xtrinsic aids, such as legislative history [and] committee reports... may be used to help resolve an ambiguity and to ascertain the true intent of the Legislature").
In 1958, the Legislature responded to a trilogy of decisions by our Supreme Court[3] effectively abolishing the common-law immunity offered charitable institutions by enacting N.J.S.A. 2A:53A-7 to -11. See Schultz v. Roman Catholic Archdiocese, 95 N.J. 530, 533, 472 A.2d 531 (1984); Jerolamon v. Fairleigh Dickinson Univ., 199 N.J.Super. 179, 182, 488 A.2d 1064 (App.Div.1985). During the Assembly Judiciary Committee hearings on the Assembly Substitute for Senate Bill No. S-204 conducted on July 17, 1958, the Committee investigated whether insurance rates for charitable organizations would rise in the absence of a charitable immunity statute. Public Hearing Before Assembly Judiciary Comm. on Assembly Substitute for Senate Bill S-204 1, 2 (July 17, 1958). Norman Machman, a representative of the National Bureau of Casualty Underwriters (NBCU), gave testimony regarding this issue as it related to schools. The following colloquy occurred between Mr. Machman and the Chairman and members of the Committee:
MR. MACHMAN: To what extent does the decision and [Senate Bill] 204 affect the schools? To the same extent that it affects other charitable institutions?
THE CHAIRMAN: The effect of [Senate Bill] 204, with reference to schools, was to place the law in the same position as it existed prior to the Supreme Court decisions. The Assembly Substitute keeps that situation intact, namely, as it existed prior to the Supreme Court decisions.
MR. MACHMAN: How does the Collopy case affect the situation?
THE CHAIRMAN: Well, the Collopy case would have rendered schools, the organization of the schools, liable.

*268 ASSEMBLYMAN CONNERY: Destroys any immunity that the schools previously enjoyed with respect to accidents and injuries to persons occurring through the negligence of the agentsemployees of the schools, etc.
MR. MACHMAN: Are we talking now about schools
THE CHAIRMAN: We are not talking about public schools. We are talking about schools that are operated by religious and charitable organizations.

[Id. at 107-108 (emphasis added).]
In our view, the colloquy is a clear pronouncement that the Legislature never intended that the Act would afford immunity to public schools.
Equally important is that local boards of education possess none of the indicia recognized by our case law as those of a "nonprofit corporation ... organized exclusively for religious, charitable [or] educational ... purposes." N.J.S.A. 2A:53A-7. Our task in determining whether charitable immunity applies is to discover the entity's "aims, its origins, and its method of operation in order to determine whether its dominant motive is charity or some other form of enterprise." Parker, supra, 243 N.J.Super. at 325, 579 A.2d 360.
The fact that a local board of education, as a public entity, is not-for-profit, is not dispositive. "Nonprofit status cannot be equated with charitableness." Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 286, 261 A.2d 143 (1970). Moreover, a board of education, as a public entity, is obviously not dependent on fund-raising activities and charitable contributions in order to provide its services. As we noted in Parker, supra, 243 N.J.Super. at 326, 579 A.2d 360, "[p]rivate charitable contributions have been involved at least in part" in every reported case where immunity has been conferred under the Act. Ibid. This is because the public policy footing of the Act is "the preservation of private charitable contributions for their designated purposes." Ibid. Winters v. City of Jersey City, 120 N.J.Super. 129, 293 A.2d 431 (App.Div.1972), modified on dissent, 63 N.J. 7, 304 A.2d 196 (1973), is instructive on this point, since, as here, it involved whether the immunity under the Act should be applied to a public entity. A majority of our court held that the limited liability prescribed by N.J.S.A. 2A:53A-8 was applicable to a municipal hospital owned and operated by the City of Jersey City. 120 N.J.Super. at 133-34, 293 A.2d 431. Judge Lynch, whose dissent was subsequently adopted by the Supreme Court, concluded otherwise, reaffirming that the purpose of charitable immunity was "mainly to protect the trust funds of such charities from serious dissipation ... and to avoid diversion of their benefactors' contributions from the purpose for which they were made." Id. at 144-45, 293 A.2d 431 (Lynch, J.A.D., dissenting). He added:
The words describing those organizations upon which the statute confers either total or limited immunity ("nonprofit corporation," etc.) have developed an established connotation in our law, i.e., a private charity which depends on charitable contributions and whose funds are held in trust solely for the purpose of the charity. The statutory language is derived directly from the cases which conferred immunity upon private charities at common law. A municipality is not such a corporation, society or association. It is organized under, and has the powers and duties provided for, in N.J.S.A. 40:42-1 et seq.

[Id. at 138, 293 A.2d 431 (Lynch, J.A.D., dissenting) (emphasis added).]
A public school board, like a municipality, is not "a private charity which depends on charitable contributions and whose funds are held in trust solely for the purpose of the charity." Ibid. To the contrary, school boards are "instrumentalit[ies] of the State," Durgin v. Brown, 37 N.J. 189, 199, 180 A.2d 136 (1962), supported not by charitable contributions, but by taxes and government aid. Public school boards are the governing bodies of school districts which are "local government units" themselves. Botkin v. Mayor & Borough Council of Westwood, 52 N.J.Super. 416, 425, 145 A.2d 618 (App. Div.1958). See also N.J.S.A. 18A:10-1 ("[t]he schools of each school district shall be conducted, by and under the supervision of a *269 board of education, which shall be a body corporate and which shall be constituted and governed, as provided by this title").
As such, local boards are "obligated to meet the educational needs of the children" of their respective districts. Durgin, supra, 37 N.J. at 199, 180 A.2d 136. This mandate stems from our State constitution, see N.J. Const. art. VIII, § 4, ¶ 1 (1947), which requires the State "to maintain and support a thorough and efficient system of free public schools...." Robinson v. Cahill, 62 N.J. 473, 509, 303 A.2d 273 (1973). "[T]he State must meet that obligation itself or if it choses to enlist local government it must do so in terms which will fulfill that obligation." Ibid.
Moreover, a local board is dependent essentially upon the tax dollar and federal subsidies. Id. at 516-19, 303 A.2d 273. It is firmly held that "where ... an entity is expressly conceived, created and operated to serve purely as a conduit for [government] funds ... its denomination as a charity for immunity purposes is incorrect, notwithstanding its benevolent aims." Parker, supra, 243 N.J.Super. at 327-28, 579 A.2d 360; Morales, supra, 302 N.J.Super. at 55, 694 A.2d 600 (quoting Parker, supra, 243 N.J.Super. at 327-28, 579 A.2d 360 (stating that "a non-profit corporation may not claim charitable immunity if it serves `purely as a conduit' for the distribution of government funds")). Thus, as a governmental unit carrying out its statutory and constitutional mission, a local board of education may not avail itself of the protections of charitable immunity. See Winters, supra, 120 N.J.Super. at 145, 293 A.2d 431 (Lynch, J.A.D., dissenting) (recognizing that the "policy reasons inspiring charitable immunity at common law have no application to a municipality").
In finding that the Board defendants were entitled to charitable immunity, the trial court relied primarily on our opinion in Graber, supra, 313 N.J.Super. at 481, 713 A.2d 503. In Graber, we held that Richard Stockton College, a public institution, was afforded immunity under the Act because Stockton is "a nonprofit institution organized exclusively for educational purposes, even though it is also a public nonprofit college." Id. at 486, 713 A.2d 503. Citing Graber, the Board defendants argue before us that "[i]t would now be inconsistent for a court to conclude that such immunity would not apply to a public, not for profit elementary school." We disagree.
As noted, a local board of education is "an entity ... expressly conceived, created and operated to serve purely as a conduit for [government funds]...." Parker, supra, 243 N.J.Super. at 327-28, 579 A.2d 360. As such, it cannot be denominated as a charity for immunity purposes. In contrast, Stockton's operating budget is derived from various sources which include State support, tuition, contract fees, and gifts or donations. Graber, supra, 313 N.J.Super. at 482, 713 A.2d 503. Implicit in Graber is the court's reasoning that Stockton's fundamental nature as a nonprofit educational entity was not altered merely because it receives some governmental support.
Moreover, unlike a local board of education, which is obligated to meet the educational needs of the children in its district by providing a thorough and efficient system of free public schools, Robinson, supra, 62 N.J. at 509, 303 A.2d 273, Stockton is not mandated by the State constitution to provide "free" educational services. Rather, it is an institution of higher learning, chartered and licensed by the State, charging tuition to all students for the rendering of its educational services. See Graber, supra, 313 N.J.Super. at 482, 713 A.2d 503.
Bloom v. Seton Hall Univ., 307 N.J.Super. 487, 704 A.2d 1334 (App.Div.), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998), cited by the Board defendants, is also distinguishable. The issue in Bloom was whether Seton Hall University lost the statutory immunity afforded under the Act because it operated a pub catering to students and their guests and whether plaintiff, a student, ceased to be a "beneficiary ... of [its] works," N.J.S.A. 2A:53A-7, while patronizing the pub. Bloom, supra, 307 N.J.Super. at 491, 704 A.2d 1334. We concluded that it was not inconsistent with the educational goals for a university to include "opportunities to mature in an environment enriched not only by *270 study and classes, but by diverse forms of social interchange within the university setting." Id. at 492, 704 A.2d 1334. We also concluded that plaintiff was no less a Seton Hall student because he "bought a beer at a University-run student pub than if he bought a sandwich in a University-run commons, and no less a beneficiary of its works." Ibid. Bloom had no occasion to address the narrow question before us: whether a public entity such as a local school board was intended to be afforded the immunity under the Act.
Reversed and remanded for further proceedings.
NOTES
[1] Graber v. Richard Stockton College, 313 N.J.Super. 476, 481-82, 713 A.2d 503 (App.Div.), certif. denied, 156 N.J. 409, 719 A.2d 641 (1998)
[2] N.J.S.A. 2A:53A-7 was amended effective July 24, 1995. Under the amended version, "trustees, directors, officers, employees, agents, servants or volunteers" of charitable organizations were also given immunity from individual liability whereas under the old version they were not. See L. 1995, c.183.
[3] Dalton v. St. Luke's Catholic Church, 27 N.J. 22, 141 A.2d 273 (1958); Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, 141 A.2d 276 (1958); Benton v. Y.M.C.A., 27 N.J. 67, 141 A.2d 298 (1958).