**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-1477

———————

JOHN DOE,
                              Appellant

v.

PRINCETON UNIVERSITY

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:17-cv-01614)
District Judge: Hon. Peter G. Sheridan

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 3, 2019

———————

Before: SHWARTZ, SCIRICA, and FUENTES, Circuit Judges.

(Filed: October 25, 2019)

———————

OPINION[*]

———————

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiff John Doe appeals the District Court's order dismissing claims against Defendant Princeton University arising from a sexual misconduct investigation and Doe's dismissal from the University. Because Doe has not alleged sufficient facts to support his claims, we will affirm.

I[1]

Doe was a male graduate student at Princeton. Doe describes himself as homosexual, but, while at Princeton, his sexual orientation was not public. One spring semester, Doe met a male undergraduate student ("Student X"). Doe alleges that Student X sexually assaulted him during the following summer and when they returned to Princeton in the fall. After the second assault, "Student X's friends created a hostile environment for John Doe," "by yelling out a gay slur to him and calling him a liar." Compl. ¶ 84, ECF No. 54-1. Doe alleged that he "no longer felt welcome at" the religious community center both he and Student X frequented. Compl. ¶ 84.

Doe notified Princeton that he was twice sexually assaulted by Student X and that Student X's friends were harassing him. Student X filed a cross-complaint.

Princeton's Rights, Rules, Responsibilities guide ("RRR") proscribes sexual misconduct and sex discrimination, and outlines the procedures for the investigation and discipline for violations. Pursuant to the RRR, Princeton assembled a panel of administrators to investigate Doe's and Student X's complaints. The panel issued a set of

---

[1] Because Doe appeals an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept the well-pleaded facts alleged in his complaint as true and recount them here. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

2

charges against each student. Student X was charged with, among other things, non-consensual sexual penetration and sexual contact, sexual harassment, and stalking. Doe was charged with sexual harassment, stalking, and retaliation. Doe claims there was "no basis" for the charges against him. Compl. ¶ 105. Ultimately, the panel found both students "not responsible" for any charges. Compl. ¶ 122. Doe's appeal to a new panel was denied.

Doe alleges that the panel acted improperly by, among other things, meeting with Student X twice before meeting with Doe, not interviewing all of Doe's witnesses, obtaining information about Doe's previous sexual history, and giving Student X the opportunity to "submit new evidence" during the panel's deliberation phase. Compl. ¶ 118.

During the panel's investigation and deliberation, Princeton "banned" Doe "from attending" the religious community center, Compl. ¶ 110, but declined to provide Doe with a no-contact order against Student X's friends. Doe asserts that he felt isolated, depressed, and attempted suicide. Doe contacted clergy and student services administrators (including panel members) regarding his suicidal behavior. None of these individuals took any action.

Doe alleges that the "significant stress and emotional upheaval" from the sexual assault "had a negative impact on [his] grades and academic standing." Compl. ¶ 144. At one point, Doe asked the Graduate School for an extension to take a midterm exam so he had time to submit evidence to the panel before it closed its investigation. The

Graduate School did not grant the extension request, and his academic advisor provided no help. Princeton, however, offered him a leave of absence.

In the final semester of his program, Doe concluded that he would be unable to meet his degree requirements and requested reenrollment for the following semester. Princeton notified Doe that he must maintain a B average in his courses for the spring semester to be eligible to enroll for the fall semester. Doe was unable to maintain a B average, and Princeton terminated his enrollment. Doe alleges that another male student in his program received his degree without completing his final semester.

Doe sued Princeton for (1) violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, (2) breach of contract, (3) estoppel and reliance, and (4) negligence. The District Court dismissed Doe's complaint without prejudice under Federal Rule of Civil Procedure 12(b)(6), concluding that Doe had failed to allege sufficient facts to support his claims. Doe v. Princeton Univ., No. 17-cv-1614, 2018 WL 2396685 (D.N.J. Feb. 6, 2018). Doe did not amend his complaint and instead appeals.

II[2]

A

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review of a district court's order granting a motion to dismiss. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011). We must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and

4

We first address Doe's claim that Princeton violated Title IX. Title IX provides in relevant part: "No person in the United States shall, on the basis of sex, . . . be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Doe offers three theories of liability under Title IX. Each require him to allege that he faced disparate treatment "on the basis of sex." Id.; Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 534-35 (3d Cir. 2018). To show disparate treatment on the basis of sex, a plaintiff may show that similarly situated individuals of the other sex experienced different treatment. See Boyertown, 897 F.3d at n.110. Doe asserts that Princeton is biased against male sexual assault complainants and that, had he been a "female victim of sexual assault by a male assailant," the proceedings would have been different. Compl. ¶ 174.

Doe has not pleaded facts showing Princeton treated him differently because of his sex. His allegations that he "would not have been subject to Princeton's discriminatory acts if he were a female victim," Compl. ¶ 174, and that "Princeton also does not believe male students can be victims," Compl. ¶ 127, are too "generalized" and "conclusory" to raise an inference of disparate treatment, Doe v. Columbia Coll. Chi., 933 F.3d 849, 855 (7th Cir. 2019); Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994). Moreover, Doe

---

mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotation mark omitted). "[W]e may consider documents 'integral to or explicitly referred to in the complaint' . . . ." In re Lipitor Antitrust Litig., 868 F.3d 231, 249 (3d Cir. 2017).

alleged no facts reflecting that the disciplinary process and results for female victims are different from men.  See Columbia Coll. Chi., 933 F.3d at 856 (holding that plaintiff's allegations regarding procedural improprieties were insufficient when he never alleged that female students did not face those improprieties).[3]

Doe also alleges that Princeton has a "history of complaints regarding its mishandling of reports of sexual assault" and notes one complaint and four investigations.  He does not allege, however, that this "mishandling" involved anti-male bias nor did he present factual allegations from which to infer "a pattern of gender-based decision-making."  Doe v. Miami Univ., 882 F.3d 579, 593 (6th Cir. 2018); see also Doe v. Columbia Univ., 831 F.3d 46, 50-52 (2d Cir. 2016).  Moreover, while Doe lists many grievances about how the process was conducted and how he was treated, he does not plead facts indicating that any of this alleged unfavorable treatment was due to his sex.

Doe's Title IX claim separately fails because he has not alleged facts showing Princeton was deliberately indifferent to the alleged sexual harassment.  A Title IX deliberate indifference claim requires a plaintiff to show, among other things, (1) sexual

_____

[3] Doe contends that his allegations should suffice at the pleading stage and requiring him to produce evidence of a comparator is too difficult without discovery. He suggests that McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which describes the burden-shifting framework for discrimination claims, "provides 'a temporary presumption in plaintiff's favor reduc[ing] the plaintiff's pleading burden, so that the alleged facts need support only a minimal inference of bias.'" Appellant's Br. at 36-37 (quoting Doe v. Columbia Univ., 831 F.3d 46, 56 (2d Cir. 2016)).  That is an incorrect articulation of our pleading standard for discrimination claims.  Rather, the pleading must set forth some facts—beyond conclusions—that raise an inference of disparate treatment.  See, e.g., Connelly v. Lane Constr. Corp., 809 F.3d 780, 791 (3d Cir. 2016) (pleading's factual allegations sufficient when plaintiff alleged her employer failed to rehire her despite rehiring six other male employees, two with less seniority).

harassment that is "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school," Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 650 (1999); and (2) that the defendant's "response to the harassment . . . is clearly unreasonable in light of the known circumstances," id. at 649.

Doe's claim that "Princeton was deliberately indifferent to [Doe's] complaints of sexual assault against Student X," Compl. ¶ 150, is predicated on his view that there were procedural flaws in the investigative process. The complaint and documents integral to it shows that Princeton investigated and adjudicated his claims. We cannot say that any of the alleged flaws rendered Princeton's response "clearly unreasonable." Davis, 526 U.S. at 649.

Doe's claim that Princeton was deliberately indifferent to the allegedly hostile environment "created" by Student X's friends also fails. Compl. ¶¶ 84, 150. Doe alleges that Princeton ignored his request for a no-contact order with Student X's friends who had "harassed [him] on campus by yelling out a gay slur to him and calling him a liar." Compl. ¶ 84. The students' alleged "harassment," however, was not "so severe, pervasive, and objectively offensive" to constitute sexual harassment under Title IX. Doe's allegation that Student X's friends created a "hostile environment," Compl. ¶ 84, is conclusory, and one instance of being called a slur, while offensive, is neither severe nor pervasive. Davis, 526 U.S. at 653-54 (concluding that multiple months of "repeated acts of sexual harassment," which "included numerous acts of objectively offensive touching" and "multiple" victims, constituted "severe, pervasive, and objectively offensive"

7

conduct). Thus, Doe has not alleged a deliberate indifference claim based on a hostile environment.[4]

Doe also alleges that Princeton retaliated against him for filing his complaint against Student X by (1) "facilitating Student X's cross-complaint and/or initiating its own charges against [Doe]," Compl. ¶ 107, and (2) failing to provide academic accommodations or respond to his psychiatric problems. A Title IX retaliation claim requires a plaintiff to allege that (1) he "engaged in activity protected by Title IX," (2) he "suffered an adverse action," and (3) "there was a causal connection between the two." Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 564 (3d Cir. 2017). Doe's report of sexual harassment is protected activity, Connelly, 809 F.3d at 792, but his retaliation claim fails on the other elements. On his first retaliation theory, he has failed to allege that he suffered adverse action because of protected activity. Princeton did not sua sponte initiate charges against Doe; rather, Student X filed a cross-complaint. Investigating and adjudicating a student's cross-complaint is not an adverse action. On his second retaliation theory, he has not alleged any "causal connection between" his filing of a sexual assault complaint and the alleged failure to provide academic assistance. Mercy Catholic, 850 F.3d at 564. The fact that he had a sexual assault complaint pending at the time he requested academic accommodations to prepare evidence for the

_____

[4] To the extent the complaint can be read to also allege that Princeton was "deliberately indifferent" to Doe's academic or psychiatric troubles, that allegation cannot support a Title IX deliberate indifference claim because a defendant only can be liable under Title IX when the institution is deliberately indifferent to sexual harassment, Davis, 526 U.S. at 649, and not based on indifference to academic or psychiatric problems (unless the problems were ignored because of the student's sex).

8

proceeding does not lead to an inference that the denial of his accommodation request was in retaliation for invoking Title IX's protections.[5] Accordingly, the District Court correctly dismissed Doe's Title IX claims.

B

Doe's breach of contract claim is also without merit. Doe alleges that Princeton breached certain provisions of the RRR. Under the governing New Jersey law, "the relationship between a private university and its students can not be described either in pure contract or associational terms," and the role of the court in reviewing such contract claims is limited. Mittra v. Univ. of Med. & Dentistry of N.J., 719 A.2d 693, 696-97 (N.J. Super. Ct. App. Div. 1998); see also Napolitano v. Trs. of Princeton Univ., 453 A.2d 263, 272 (N.J. Super. Ct. App. Div. 1982). For example, "the role of the courts in resolving disputes involving the dismissal of a student for academic reasons [is] limited to a determination whether the university complied with its own regulations and whether the institution's decision was supported by the evidence." Mittra, 719 A.2d at 697. Similarly, for contract claims relating to discipline for misconduct, courts will examine whether "the institution violate[d] in some substantial way its rules and regulations." Id. at 698; see also Doe v. Rider Univ., 3:16-cv-4882, 2018 WL 466225, at *13 (D.N.J. Jan. 17, 2018).

---

[5] His complaint also fails to state a plausible retaliation theory because Princeton offered him an accommodation: a leave of absence. Given that Princeton tried to accommodate him, we cannot infer from the complaint that Princeton's failure to reschedule his midterm was a retaliatory action.

The complaint does not allege any "substantial" violation of the RRR.  Mittra, 719 A.2d at 698.  First, the complaint is devoid of any allegations of misrepresentation, lack of candor, or a lack of transparency and thus does not allege Princeton substantially violated any promise to "be honest and straightforward in [members'] official dealings with University processes, activities, and personnel."  Compl. ¶ 180.  Second, the complaint does not reveal Princeton substantially violated any promise to "protect the well-being of the Princeton community," Compl. ¶ 181, and "allow its community members to live in a discrimination- and harassment-free environment," Compl. ¶ 182, because, even if there were procedural flaws in the investigation, Princeton gathered evidence about the charges of sexual harassment and provided reasons for its conclusion that neither student was responsible for violating the RRR.  Third, the pleading also fails to allege Princeton substantially violated any promise to provide "appropriate interim measures" during the investigation.  Compl. ¶ 26.  University officials have significant discretion when to impose interim measures, and the interim measure Doe requested, a no-contact order, was something Princeton does not issue to students.  Finally, as to Doe's claim that Princeton "arbitrarily" required that he maintain a B average, universities have significant independence "in dealing with the academic failures, transgressions or problems of a student."  Napolitano, 453 A.2d at 567; see also Mittra, 719 A.2d at 697-98.  Moreover, Doe has identified no policy preventing Princeton from imposing academic requirements for continued enrollment.  See Mittra, 719 A.2d at 698

10

(rejecting claim arising from an academic dismissal when there was no indication that the school "deviated in some significant way from its published rules").[6]

For these reasons, the District Court correctly dismissed Doe's breach of contract claim.

## C

Doe's promissory estoppel claim also is without merit. Doe alleges that Princeton promised, in return for Doe's acceptance of admission and tuition, that "Princeton would not tolerate and, [Doe] would not suffer" sexual assault by another student, unfair procedures, or an "arbitrary termination of his enrollment." Compl. ¶¶ 196-97. To state a claim for promissory estoppel, a plaintiff must allege, among other things, "a clear and definite promise." Toll Bros., Inc. v. Bd. of Chosen Freeholders, 944 A.2d 1, 19 (N.J. 2008). Doe has not alleged a "clear and definite promise" because the promises he identified represent the "general expectation[s]" a student has when attending a university. See E. Orange Bd. of Educ. v. N.J. Sch. Constr. Corp., 963 A.2d 865, 874-75 (N.J. Super. Ct. App. Div. 2009) (holding that a "general expectation" of benefit is insufficient to support a promissory estoppel claim). Given the aspirational nature of each alleged representation, none constitute an enforceable promise that can support a promissory estoppel claim.

## D

---

[6] In his brief, Doe argues that Princeton also breached the RRR by failing to take prompt action when investigating his complaint and retaliating against him, but he never alleged those violations in his complaint and so we do not consider them.

11

The District Court also properly dismissed Doe's negligence claim because Princeton is entitled to charitable immunity. The New Jersey Charitable Immunity Act provides:

> No nonprofit corporation . . . organized exclusively for . . . educational purposes . . . shall . . . be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation . . . where such person is a beneficiary . . . of the works of such nonprofit corporation . . . .

N.J. Stat. Ann. § 2A:53A-7(a). "[A]n entity qualifies for charitable immunity when it . . . was promoting [religious, charitable, or educational] objectives and [for non-profit] purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." O'Connell v. State, 795 A.2d 857, 860 (N.J. 2002) (internal quotation marks and citation omitted). This "involves two inquiries": (1) "whether the organization pleading the immunity, at the time in question, was engaged in the performance of the objectives it was organized to advance," and (2) "whether the injured party was a direct recipient of those good works." Green v. Monmouth Univ., 206 A.3d 394, 403 (N.J. 2019) (internal quotation marks and alterations omitted). Under the first inquiry, New Jersey courts "have found a broad variety of activities offered by educational institutions to advance their educational objectives." Id. at 406. Under the second inquiry, a student "engaging in educational pursuits" is "per se a beneficiary" of a university.[7] O'Connell, 795 A.2d at

---

[7] A student is a beneficiary even when he or she is not engaging in an activity "closely tied to the traditional educational purposes of an institution of learning." Orzech v. Fairleigh Dickinson Univ., 985 A.2d 189, 196 (N.J. Super. Ct. App. Div. 2009) (student died following alcohol-related accident in a dormitory); Bloom v. Seton Hall Univ., 704 A.2d 1334, 1336 (N.J. Super. Ct. App. Div. 1998) (student fell in an on-campus pub).

861 (quoting Graber v. Richard Stockton Coll. of N.J., 713 A.2d 503, 507 (N.J. Super. Ct. App. Div. 1998)).

Doe claims that Princeton was negligent in (1) investigating and adjudicating his sexual assault allegations against Student X, and (2) not "provid[ing] resources, guidance and intervention regarding [his] suicide attempts." Compl. ¶ 204. On Doe's first negligence theory, Princeton was "engaged in the performance of" its educational objectives, Green, 206 A.3d at 403, when it investigated allegations of sexual misconduct. Princeton recognizes the harm of sexual misconduct, and, to further its educational mission, Princeton prohibits sexual misconduct within its community, investigates the claims, and disciplines violators. As a student, Doe is a beneficiary of these protections and procedures. Princeton thus is immune from a negligence claim arising from its investigation and adjudication of Doe's sexual assault complaint.

Doe's second negligence theory alleges that Princeton was negligent when providing student services. Doe sought out student services from several Princeton officials. The student services he sought are "activities offered by educational institutions to advance their educational objectives," and students are beneficiaries of these services. Green, 206 A.3d at 406. Princeton is thus immune from negligence claims based on the responses to Doe's requests for such services.

Accordingly, Princeton is entitled to charitable immunity and so his negligence claim was properly dismissed.

III

For the foregoing reasons, we will affirm.

13