**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5535-17T4

EDWARD F. CASTELLANO,

    Plaintiff-Appellant,

v.

GARRETT ENTERPRISES, LLC,
JOSEPH URAS MONUMENTS
CORPORATION, and CERTIFIED
BUILDING MAINTENANCE, INC.,

    Defendants,

and

ST. JOSEPH PARISH, JEREMIAH
HOUSE, and DIOCESE OF TRENTON,

    Defendants-Respondents.

_____

Argued October 3, 2019 – Decided October 10, 2019

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1076-15.

Lee Michael Levitt argued the cause for appellant (Lee Levitt, LLC, attorneys; Lee Michael Levitt and Stacy L. Dwyer, on the brief).

Christine M. Pickel argued the cause for respondents (Backes & Hill, LLP, attorneys; Christine M. Pickel, on the brief).

PER CURIAM

As part of the disposition of his second drunk-driving conviction, plaintiff Edward Castellano was ordered to participate in a forty-eight-hour IDRC[1] program. The program he attended in February 2014 was located on property owned and operated by defendant St. Joseph's Catholic Church in Keyport.[2] It had snowed in the days leading up to his attendance, including the night before, and as plaintiff walked about the premises before the program's start, he slipped and fell, causing the alleged injuries for which he sought compensation in this lawsuit.

---

[1] Intoxicated Drivers Resource Center. See N.J.A.C. 10:162-1.2.

[2] It is undisputed that defendant St. Joseph's Church owns, operates and maintains the property in question. The church property includes Jeremiah House, which contains meeting spaces, lounges, a Eucharistic Chapel, and sleeping quarters with forty-three beds. Defendant Garrett Enterprises ran the IDRC program that plaintiff was attending. Garrett and St. Joseph's Church had an agreement that allowed Garrett to use Jeremiah House for its forty-eight-hour IDRC program in exchange for its payment to St. Joseph's Church of $100 per client.

A-5535-17T4

Following pretrial discovery, St. Joseph's Church[3] successfully moved for summary judgment on charitable immunity grounds. Plaintiff appeals, arguing the judge erred in granting summary judgment because, in his view, St. Joseph's Church "was not engaged in the performance of the charitable objectives it was organized to advance" and he was "unconcerned in and unrelated to the benefactions of" St. Joseph's Church.[4] We reject these arguments and affirm substantially for the reasons expressed by Judge Katie A. Gummer in her comprehensive and thoughtful oral decision. We add only the following comments.

In "distilling" the language of the Charitable Immunity Act[5] "to its essence," our Supreme Court has recognized that an entity qualifies for immunity when it "(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was

---

[3] The parties have not distinguished between or among St. Joseph's Church, Jeremiah House, and the Diocese of Trenton, as if, for present purposes, they are indistinguishable. Accordingly, like plaintiff, we will focus on the role of St. Joseph's Church in this matter.

[4] Plaintiff and Garrett settled their differences. Defendant Joseph Uras Monuments obtained summary judgment in its favor; plaintiff does not appeal that disposition.

[5] N.J.S.A. 2A:53A-7 to -11.

promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." O'Connell v. State, 171 N.J. 484, 489 (2002) (quoting Hamel v. State, 321 N.J. Super. 67, 72 (App. Div. 1999)); see also Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333, 342 (2003). There is no doubt that, in moving for summary judgment, St. Joseph's Church met the first two prongs; it was organized as a nonprofit entity exclusively for religious purposes, and plaintiff does not suggest otherwise. Plaintiff's argument focuses on the third element, which poses two questions: was the entity "engaged in the performance of [its] charitable objectives" at the time of the incident and was the plaintiff a beneficiary of those good works? Ryan, 174 N.J. at 350.

These concepts are to be viewed liberally, as the Court of Errors and Appeals observed long ago:

> The church function is not . . . narrowly confined. It is not limited to sectarian teaching and worship. In [the] modern view, exercises designed to aid in the advancement of the spiritual, moral, ethical and cultural life of the community in general are deemed within the purview of the religious society. A social center is now commonly regarded as a proper adjunctive of the local church – conducive to the public good as well as advantageous to the congregation.
>
> [Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 332-33 (E. & A. 1939).]

4

Our Supreme Court remains committed to this broad interpretation of charitable objectives and good works, Ryan, 175 N.J. at 350; indeed, that approach is mandated by the Legislature, which declared that the Act is to be "deemed remedial and shall be liberally construed so as to afford immunity," N.J.S.A. 2A:53A-10.

The record – even when viewed in the light most favorable to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) – demonstrates that, in making its property available for IDRC purposes, St. Joseph's Church was acting in accord with its charitable objectives. Contrary to plaintiff's inventive contentions, the IDRC program's essential purpose is not to incarcerate – participants were free to leave any time[6] – but to provide alcohol and drug education and highway safety; the program coordinator might also evaluate a participant for further treatment. All those goals fit well within the church's broad mission. Even if the court were to interpret the purpose of IDRC programs in the manner urged by plaintiff, ministering to the imprisoned is hardly inconsistent with the principles upon which St. Joseph's Church was founded. See, e.g., Matthew 25:36, 40 ("I was in prison and you came to visit me . . . I

---

[6] To be sure, a participant's failure to complete the program would likely generate consequences, such as incarceration; but that incarceration would not occur at St. Joseph's Church.

5

tell you the truth, whatever you did for one of the least of these brothers of mine, you did for me").  By providing a place for highway safety education as well as alcohol and drug education and evaluation – for the rehabilitation of DWI offenders – St. Joseph's Church acted well within the scope of its mission and for plaintiff's benefit.[7]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] We also recognize that Garrett's payment to St. Joseph's Church for the use of Jeremiah House would appear to have no relevance in the immunity analysis. See Green v. Monmouth University, 237 N.J. 516, 539 (2019).

A-5535-17T4